**Robert VAN HOOK, Petitioner,**

v.

**Carl ANDERSON, Warden, Respondent.**

**No. C–1–94–269.**

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 19, 2001.

## OPINION AND ORDER

SMITH, District Judge.

This is a death penalty habeas corpus action filed by petitioner, Robert Van Hook, pursuant to 28 U.S.C. § 2254. After being convicted of capital murder and aggravated robbery by a three-judge panel, and after a mitigation hearing to address sentencing issues, Van Hook was sentenced to death by the same panel on August 8, 1985. After exhausting all available state court remedies, Van Hook filed this habeas corpus petition on April 29, 1997. A stay of execution has been issued. This order will address the questions of whether any of Van Hook's claims for relief must be denied on grounds that they were procedurally defaulted during the course of state court proceedings, and whether he has successfully demonstrated the existence of cause sufficient to excuse that default.

Van Hook has never denied killing the victim, but maintains that he did so under a rage precipitated by homosexual panic and severe borderline personality disorder so consuming and debilitating that he lacked the requisite intent to make him guilty of the offense of aggravated murder or eligible for the death penalty. He also challenges the legality of his conviction and sentence on grounds that incriminating statements he made were improperly admitted at trial, that information obtained from a cellmate informant was improperly admitted at trial, and that his trial attorneys provided constitutionally deficient assistance during the trial and penalty phases, especially in failing to investigate, develop, and present evidence demonstrating his mental disorders and the role they played in the commission of the offense. Van Hook also challenges the constitutionality of Ohio's death penalty scheme, and argues that racism and a lack of due process have tainted everything in Hamilton County from the jury selection process, to capital indictment decisions, to the manner in which capital postconviction actions are handled.

### I. Factual History

The details of this capital murder and aggravated robbery are set forth in numerous state court opinions, including the Ohio Supreme Court's published opinion in *State v. Van Hook*, 39 Ohio St.3d 256, 530 N.E.2d 883 (1988). That account is reprinted below verbatim.

It was established at trial that on the evening of February 18, 1985, Robert Van Hook, appellant herein, went to a downtown Cincinnati establishment called the Subway Bar. There, he approached David Self. The two engaged in conversation while consuming alcoholic beverages for approximately two to three hours. As they left together, Self stopped briefly to explain to the bartender that he and appellant were planning to go to Self's apartment.

At the apartment, appellant lured Self into a vulnerable position and, with no provocation, attacked him. Initially, appellant strangled Self into a state of unconsciousness. He then took a paring knife from the victim's kitchen and stabbed the victim behind the right ear, aiming the thrust upward toward the brain, accompanied by a blade-twisting movement. Appellant then stabbed the victim's neck in numerous places, each stab wound accompanied by cutting motions. Several of these wounds penetrated over halfway through the neck and apparently represented appellant's efforts to decapitate the victim. Appellant then made an incision on the victim's body from the abdomen up to and

over the sternum. The victim's abdominal cavity was opened so that his liver was visible. Appellant then stabbed upward a number of times, penetrating the liver and eventually penetrating the abdominal wall into the heart in three places. He placed a small bottle which had contained amyl nitrate, its cap, a cigarette butt and the paring knife into the victim's abdominal cavity.

Appellant then searched much of the apartment including a chest of drawers and a jewelry box. There was evidence that particular items of jewelry were taken, including specific testimony that the victim's gold chain necklace, which he had worn into the bar earlier that evening, was missing. Thereafter, appellant looked into the victim's refrigerator for food, but not seeing anything that "[he] liked," he prepared his departure from the apartment. Such preparation included smearing his bloody fingerprints, and turning up the volume on the stereo system.

After leaving the apartment, appellant went to the home of Dr. Robert Hoy, a family friend. There, under the guise of recovering from a fight with his stepfather, appellant borrowed money and ate a large meal. He then left and eventually arrived in Ft. Lauderdale, Florida. There, he evaded detection until April 1, 1985, when, pursuant to information given by appellant's family, he was arrested by the Oakland Park police.

*Id.* at 256–57, 530 N.E.2d 883.

## II. State Court Procedural History [1]

This case has followed the typical procedural path through the state court system. After being sentenced to death, Van Hook filed a direct appeal which was pursued through the First District Court of Appeals and the Ohio Supreme Court. Throughout his direct appeal proceedings, Van Hook was represented by the same two attorneys who had represented him at

trial. Represented by the Ohio Public Defender's Office, Van Hook then filed a post-conviction petition which, after it was denied, was appealed to both the First District Court of Appeals and the Ohio Supreme Court. Van Hook also filed a motion for delayed reconsideration in the court of appeals, as authorized by *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), alleging that his appellate attorneys had provided ineffective assistance in not raising certain assignments of error. The court of appeals dismissed Van Hook's motion as untimely, and Van Hook appealed to the Ohio Supreme Court. Van Hook also filed a similar motion for delayed reconsideration in the Ohio Supreme Court, arguing that his appellate attorneys had been ineffective before that court. The Ohio Supreme Court dismissed the motion, concluding that Van Hook was not entitled to the effective assistance of counsel during a second appeal as of right.

### A. *Trial and Direct Appeal*

Robert Van Hook was indicted by the Hamilton County Grand Jury on April 18, 1985 on one count of aggravated murder, with a death penalty specification, and one count of aggravated robbery. On April 23, 1985, he entered a written plea of not guilty by reason of insanity, which triggered court-ordered psychiatric evaluations. Van Hook waived his right to a jury trial, and was tried, pursuant to Ohio law, by a three-judge panel. The trial commenced on July 15, 1985, and, on July 29, 1985, the three-judge panel found him guilty as charged. Following a two-day break, the mitigation hearing commenced. On August 8, 1985, the three-judge panel sentenced Van Hook to death on the aggravated murder count, and a prison term of ten (10) to twenty-five (25) years on the aggravated robbery count.

Represented by the same two attorneys who represented him at trial, Van Hook appealed the judgment to the Ohio Court

---

1. The specific errors raised at each stage of the state court proceedings are set out verba-

tim in the Appendix beginning at page ——, below.

of Appeals for the First Appellate District, and raised eight assignments of error. On May 13, 1987, the court of appeals affirmed the judgment against petitioner in full. After conducting its own independent review, the court of appeals also concluded that the aggravating factors substantially outweighed the mitigating circumstances, and that the death sentence was not inappropriate or disproportionate. *State v. Van Hook*, C–85–0565, 1987 WL 11202 (Hamilton Cy. Ct.App. May 13, 1987), exhibit 26 vol.II to petitioner's appendix of the state court record.

The same two attorneys subsequently initiated an appeal to the Supreme Court of Ohio, but, on July 13, 1987, Van Hook filed a *pro se* motion to dismiss his attorneys and appoint new counsel. Van Hook argued that his attorneys had failed to raise numerous laudable issues and that he was unable to assert the ineffectiveness of his attorneys until they were removed from his case. On September 2, 1987, the Ohio Supreme Court denied petitioner's motion to dismiss his attorneys. Exhibit 13 vol.III to petitioner's appendix of the state court record. Van Hook's attorneys proceeded, accordingly, to prosecute his appeal to the Supreme Court of Ohio and raised four propositions of law. On November 9, 1998, the Ohio Supreme Court affirmed the judgment against Van Hook. *State v. Van Hook*, 39 Ohio St.3d 256, 530 N.E.2d 883 (1988). After conducting its own independent review, the Ohio Supreme Court also found that the aggravating factors substantially outweighed the mitigating factors, and that the death sentence was neither inappropriate nor disproportionate.

Justice Wright authored a dissenting opinion, which Justice Brown joined. Justices Wright and Brown were of the view that the State failed to prove that Van Hook had initiated further discussions with law enforcement officers after invoking his right to counsel, and therefore, that inculpatory statements made by Van Hook to Cincinnati law enforcement officers in Florida, while awaiting extradition to Ohio, should have been suppressed.

On November 21, 1988, Van Hook's attorneys filed a motion for rehearing on the issue of whether petitioner's confession should have been suppressed. On December 21, 1988, the Ohio Supreme Court summarily dismissed the motion. Exhibit 25 vol.III to petitioner's appendix of the state court record.

On March 27, 1989, the Supreme Court of the United States denied Van Hook's petition for a writ of *certiorari*. Exhibit 6 vol.IV to petitioner's appendix of the state court record. On May 15, 1989, the Supreme Court denied his motion for rehearing. Exhibit 8 vol.IV to petitioner's appendix of the state court record. During those proceedings, Van Hook was represented by not only the same two attorneys who had represented him during trial and throughout his direct appeals, but also by Attorney H. Fred Hoefle.

### B. *Post–Conviction Proceedings*

Represented by the Ohio Public Defender's Office, Van Hook filed a postconviction action in the trial court on December 27, 1989. He raised the forty-four causes of action. The State answered the amended petition on March 23, 1990. On March 30, 1990, Van Hook supplemented his amended postconviction action with an additional exhibit. On April 26, 1990, the State filed a motion for summary judgment and/or a motion to dismiss. On June 11, 1991, the trial court dismissed Van Hook's postconviction action without holding an evidentiary hearing.[2]

Van Hook appealed to the Ohio Court of Appeals for the First Appellate District. On October 21, 1992, the court of appeals rejected Van Hook's assignments of error and affirmed the judgment of the trial

---

**2.** It appears from the record that the trial court's entry dismissing the postconviction action was first entered on June 11, 1991, and

entered again on July 10, 1991. Exhibits 27 and 29 vol.V part 3 to petitioner's appendix of the state court record.

court. Exhibits 22 and 23 vol.VI to petitioner's appendix of the state court record.

Van Hook appealed to the Supreme Court of Ohio, and essentially raised the same challenges there that he had presented to the appellate court below. The State opposed Van Hook's memorandum in support of jurisdiction, and, on March 17, 1993, the Ohio Supreme Court issued an entry overruling Van Hook's memorandum. Exhibit 11 vol.VII part 2 to petitioner's appendix of the state court record. Van Hook's motion for rehearing, filed on March 29, 1993, was summarily denied on April 28, 1993. Exhibit 14 vol.VII part 2 to petitioner's appendix of the state court record.

## C. *Proceedings Pursuant to State v. Murnahan*

On April 8, 1993, Van Hook filed, in accordance with *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992) and Ohio R.App. P. 26 and 14(B), an application for delayed reconsideration of his direct appeal to the Ohio Court of Appeals, alleging that he had received ineffective assistance of appellate counsel during that proceeding. He argued that his appellate attorneys had failed to raise a number of colorable issues, and sought to present those to the appellate court for review. The State opposed Van Hook's motion, and, on February 22, 1994, the court of appeals denied Van Hook's motion because he "failed to show good cause for filing it more than ninety days after this Court's judgment was journalized, as required by App. R. 26(B)(2)(b)." Exhibit 4 vol.VIII to petitioner's appendix of the state court record. In so holding, the appellate court noted that the application for delayed reconsideration had actually been filed before the effective date of the amendment to App.R. 26 that created the ninety-day limitation period. Van Hook filed a motion for rehearing, arguing that it was unfair to subject him to a procedural limitation that had not been in effect at the time that he filed his application. The appellate court summarily overruled his motion on April 4,

1994. Exhibit 8 vol.VIII to petitioner's appendix of the state court record.

Van Hook appealed to the Supreme Court of Ohio. The State opposed his memorandum in support of jurisdiction, and, on June 8, 1994, the Ohio Supreme Court affirmed the appellate court's decision without opinion. Exhibit 4 vol.IX to petitioner's appendix of the state court record. On August 3, 1994, the Ohio Supreme Court summarily denied Van Hook's motion for rehearing. Exhibit 7 vol.IX to petitioner's appendix of the state court record. The Supreme Court of the United States denied *certiorari* on or about December 12, 1994, and a petition for rehearing on or about February 21, 1995. Exhibits 8 and 10 vol.X to petitioner's appendix of the state court record.

On June 21, 1994, Van Hook filed a motion for delayed reconsideration pursuant to *State v. Murnahan, supra*, in the Supreme Court of Ohio. He reasoned that, because appeals to the Ohio Supreme Court in death penalty cases are characterized as second appeals *as of right*, he was entitled to the effective assistance of counsel before that court, and therefore also entitled to use the procedure announced in the *Murnahan* decision for asserting the ineffectiveness of his attorneys before that court. Van Hook argued that his appellate attorneys failed to raise numerous errors of actual or arguable merit during his direct appeal to the Ohio Supreme Court, and sought to introduce those issues for review in his motion for reconsideration. The State opposed Van Hook's motion for rehearing/reconsideration, and, on October 19, 1994, the Ohio Supreme Court denied his motion on the ground that "Van Hook's 1987 appeal to this court was not a first appeal as of right; therefore, he had not constitutional right to counsel, hence no constitutional right to effective assistance." (citation omitted). *State v. Van Hook*, 70 Ohio St.3d 1216, 639 N.E.2d 1199 (1994), exhibit 3 vol.XI to petitioner's appendix of the state court record. On December 14,

1994, the Ohio Supreme Court denied Van Hook's motion for reconsideration. Exhibit 6 vol.XI to petitioner's appendix of the state court record. On May 9, 1995, the United States Supreme Court denied Van Hook's request for *certiorari.* Exhibit 8 vol.XI to petitioner's appendix of the state court record.

### III. Habeas Corpus Petition

Having exhausted his state court remedies, Van Hook now petitions this Court for habeas corpus relief. Represented by Attorney James Owen and the Ohio Public Defender's Office. Van Hook filed a habeas corpus petition on October 10, 1995 raising twelve claims for relief—some of which contained several sub-parts. But on April 29, 1997, after conducting some discovery. Van Hook filed an amended habeas corpus petition superseding the original petition. Many of these claims, too, contain sub-parts. This section of the Opinion and Order will set forth in detail the claims that Van Hook has raised in this Court.

1. *Ground A—Trial Court's Failure to Suppress Van Hook's Statement under Miranda v. Arizona, 384 U.S. 436 (1966)*

Van Hook alleges that, after being detained in Florida, he made incriminating statements to Cincinnati law enforcement officers in response to questioning that they initiated even after he had invoked his right to counsel. Respondent raises no procedural default arguments against this claim.

2. *Ground B—Failure to Suppress Van Hook's Statements as Involuntary*

In this claim, Van Hook alleges that the trial court erred in not suppressing the incriminating statements that he made to Cincinnati law enforcement officers on the ground that those statements were involuntary. Van Hook argues that his inculpatory statements were not the product of his own free will because of certain mental deficiencies and years of substance abuse,

and also because the police ignored his attempt to invoke his constitutional rights and used psychological ploys, including employing Van Hook's mother to assist them, to induce Van Hook to inculpate himself. Respondent raises no procedural default arguments against this claim.

3. *Ground C—Selection Process for Venire Persons and Grand Jury Forepersons*

Van Hook argues in Ground C that the process of selecting venire persons and forepersons to serve on grand juries in Hamilton County was tainted in 1985 due to consideration of race in the drawing, selection, and empanelment of grand jurors. Within this claim, Van Hook raises two distinct challenges:

A. Members Of The Grand Jury Venire Are Improperly Chosen.

In this sub-part, Van Hook alleges that the process for identifying and selecting persons to serve on the Grand Jury in Hamilton County results in an under representation of African–Americans and other minority groups.

B. Grand Jury Forepersons Are Improperly Chosen.

Van Hook asserts in this sub-part that the Ohio Revised Code permits the presiding judge to choose the grand jury foreperson, and that the presiding common pleas court judges in Hamilton County have traditionally chosen individuals who were not included in the grand jury venire to serve as the grand jury foreperson. This, according to Van Hook, resulted in forepersons who were all Caucasian and predominantly male. Respondent asserts that this claim is barred in its entirety because the only time it was presented to the state courts was in a *"Murnahan"* application for reopening and that application was dismissed by the state courts as untimely.

4. *Ground D—Failure of the Trial Prosecutor to Provide Van Hook with Relevant, Material, Exculpatory Evidence*

In this claim, Van Hook asserts that the trial prosecutors failed to disclose to defense attorneys exculpatory evidence in their possession which, if disclosed, would have been material to the outcome of the trial. Van Hook alleges that, due to the lack of guidelines in the Hamilton County Prosecutor's Office as to what constituted "exculpatory evidence," the trial prosecutors decided what exculpatory evidence to provide based on their own perception of what the defense attorneys were pursuing. Van Hook asserts more specifically that the trial prosecutors failed to provide any exculpatory evidence concerning the statutory element of identity. Van Hook identifies six different kinds of evidence that were not disclosed and further argues that the "totality of the suppressed evidence" violated his right to due process.

### A. Ronald Light

Ronald Light was a friend of the victim's and the bartender at the club where Van Hook met the victim. At trial, Light identified Van Hook as the man who had left with the victim on the evening of the murder. Light, however, originally identified someone else as the man who had left with the victim that evening. Van Hook argues that the prosecutors failed to disclose that information, as well as the fact that Ronald Light and the victim had been romantically involved.

### B. Michael Ramsey

Michael Ramsey also testified at trial that Van Hook left the Subway bar with the victim on the night of the murder. Van Hook complains that the prosecutors failed to disclose that Ramsey initially contacted the Crime Stoppers Program about obtaining a financial reward for information about the murder.

### C. Robert Rice

At trial, Robert Rice testified that he saw Van Hook leaving the victim's apartment building around the time of the homicide. According to Van Hook, though, trial prosecutors failed to disclose that Robert Rice was "mentally challenged," and that Rice had initially provided a physical description which differed in several respects from Van Hook's appearance.

### D. Other Suspects

Van Hook asserts that trial prosecutors failed to disclose evidence that there were other "serious" suspects in the homicide investigation, thereby preventing him from demonstrating to the jury doubt as to whether he committed the offense.

### E. The Crime Scene

Van Hook complains that the trial prosecutors failed to disclose that a shoeprint, which was too indistinguishable for an accurate description, was discovered; that the victim's relatives could not determine whether anything was missing from the apartment; and that the victim's apartment was *not* ransacked. Van Hook reasons that such information could have been used to attack the aggravated robbery charge/specification against him.

### F. Robert Van Hook's Insanity

Van Hook proceeded at trial on a defense of Not Guilty By Reason of Insanity. Van Hook asserts that suppressed conclusions reached by the state's own expert were exculpatory on at least two levels: 1) explaining in a psychological manner the gruesome nature of the killing; and 2) supporting Van Hook's insanity defense.

### G. Totality of the Suppressed Evidence

Van Hook argues that the "enormous amount" of evidence suppressed by the trial prosecutors was sufficient to undermine confidence in the verdicts.

Respondent asserts that this claim is barred in its entirety because the only time it was presented to the state courts was in petitioner's application to reopen his direct appeal and the state courts denied that application as untimely.

5. *Ground E—Violation of Rights to Effective Assistance of Counsel, Due Process, Equal Protection, and of Confrontation By Denial of Access to Mental Health Experts*

The essence of this claim is that Van Hook was denied access to mental health experts who could have presented evidence not only impugning the capital conviction, but also in mitigation of punishment. Van Hook asserts that he suffered from "ego-dystonic homosexuality and a severe Borderline Personality Disorder, which caused [him] to have a psychotic break at the time of the alleged incident." With the proper medical experts, Van Hook could have created doubt as to his guilt of the aggravated murder and death penalty specifications, offered evidence in mitigation of punishment, and assailed the state's expert testimony regarding his alleged future dangerousness and the nature of his mental condition. Van Hook submits these underlying facts to support two different legal theories: one, that his trial attorneys provided ineffective assistance in failing to obtain or even request the assistance of medical experts; and two, that the trial court erred in failing to provide access to mental health experts. Respondent raises no procedural default arguments against this claim.

6. *Ground F—Failure of the Trial Court to Disseminate Addendum to Dr. Schmidtgoessling's Insanity Report*

In this claim, Van Hook asserts that the failure of the trial court to disseminate an addendum to the mental examination report prepared by one of the three experts appointed by the court, prevented him from presenting evidence during the guilt phase of the trial to negate the aggravated robbery charge/death specification, as well as evidence during the sentencing phase of the trial to mitigate punishment. Dr. Schimdtgoessling's original report was provided to the trial court, prosecutors, and defense counsel. But an addendum to that report, in which she opined that it was just as likely as not that Van Hook had killed the victim in a "homosexual panic," was furnished *only* to the trial court, and was not discovered by counsel for Van Hook until June, 1996. Van Hook asserts that the trial court's suppression of that addendum not only prejudiced him at trial, but also hindered his efforts in postconviction to prove that the killing had occurred in the midst of a homosexual panic. Respondent asserts no procedural default arguments against this claim.

7. *Ground G—Ineffective Assistance of Trial Counsel During Innocence-Guilt Phase of Trial*

Van Hook claims that his attorneys provided ineffective assistance during the innocence-guilt phase of the trial. Although he did not list them separately, there are essentially six sub-parts to this claim:

1. The failure of Van Hook's trial attorneys to interview all of the witnesses listed in the prosecution's discovery list, and to request the appointment of a criminal investigator as authorized under R.C. § 2929.024, prevented counsel from learning that Ronald Light initially identified someone other than Van Hook as the man who left the Subway bar with the victim on the night of the murder, that Michael Ramsey was paid a reward for his testimony, and that Robert Rice was mentally deficient and gave a physical description inconsistent with Van Hook's appearance.

2. Although Van Hook's trial attorneys requested the assistance of a psychological expert, the experts that were eventually appointed were not designated to assist defense counsel and failed to conduct adequate examinations.

3. Van Hook's trial attorneys failed to file a motion to suppress the results of unduly suggestive identification procedures employed by the Cincinnati police in obtaining identifications from Ronald Light and Robert Rice.

4. Van Hook's trial attorneys failed to · obtain adequate assurances that his waiver of a jury trial would ensure that his life would be spared.

5. Van Hook's trial attorneys failed to request an *in camera* inspection of witnesses' statements to law enforcement officers to identify inconsistencies.

6. Van Hook's trial attorneys erred in raising the issue of Van Hook's future dangerousness, which is not relevant in the innocence-guilt determination.

Respondent argues that petitioner's ineffective assistance of trial counsel claims are preserved for habeas corpus review only to the extent that they were addressed by the state courts during petitioner's postconviction proceedings.

### 8. Ground H—The State's Improper Use of an Informant

In this ground, Van Hook alleges that, although he had already been arraigned and appointed counsel, detectives enlisted the help of his cellmate to gather information about him. As a result, detectives learned purported details about the offense that only the assailant would know; the location of the automobile in which Van Hook fled Cincinnati; Van Hook's strategy with respect to his insanity plea; and facts about burglaries and robberies that Van Hook committed while in Florida. Respondent raises no procedural default arguments against this claim.

### 9. Ground I—Presence of Judge Bettman on Van Hook's Three Judge Panel Was Prejudicial

Van Hook argues in this claim that one of the three judges assigned to his panel following his waiver of a jury trial, Judge Bettman, was under an undue burden to impose a harsh sentence in the case because of severe criticism that he had received for the perceived leniency of a sentence he imposed in a prior rape case.

Respondent asserts that this claim is barred under Ohio's doctrine of *res judicata* because petitioner failed to raise it on direct appeal. Respondent further argues that the claim was in no way revived by the inclusion of it in petitioner's application to reopen his direct appeal since that application was dismissed by the state courts as untimely.

### 10. Ground J—Factual Innocence of Aggravated Murder with Death Penalty Specifications

Van Hook claims that he is factually innocent of aggravated murder with death specifications because he was unable to appreciate the wrongfulness of his alleged conduct due to his borderline personality disorder, and therefore did not have specific intent to cause the victim's death. Van Hook asserts that he has new evidence, which would have been presented at trial but for the ineffectiveness of his trial counsel, including the "treatment addendum" to Dr. Schmidtgoessling's insanity report. Respondent argues that this claim is barred under Ohio's doctrine of *res judicata* because petitioner failed to raise the claim on direct appeal and now no longer can.

### 11. Ground K—Ineffective Assistance of Trial Counsel During Mitigation Phase of Trial

Van Hook asserts that his trial attorneys provided ineffective assistance during the mitigation phase of his bifurcated trial. There are essentially sub-parts to this claim, although Van Hook did not list them separately:

1. Van Hook's trial attorneys failed to conduct an adequate sentencing investigation prior to the commencement of trial, or in lieu to procure the assistance of an investigator trained in capital sentencing

cases, and instead, relied on the pre-sentence investigation report prepared by the Hamilton County Adult Probation Department whose investigators are not adequately trained and do not collect social history.

2. Van Hook's trial attorneys failed to request that a psychologist be appointed specifically to assist the defense with the sentencing proceeding.

3. Van Hook's trial attorneys failed to object to improper evidence presented during the mitigation hearing, including: the pre-sentence investigation report prepared by the Adult Probation Department, which included death recommendations from the Cincinnati police department and a "victim impact statement" from the victim's family as to the economic loss and psychological impact caused by the victim's death; testimony regarding Van Hook's lack of remorse; reference to and reliance on Van Hook's failure to testify during the innocence-guilt phase of trial; evidence and argument of Van Hook's potential future dangerousness; and Van Hook's prior criminal history.

Respondent asserts, as he did against ground G, that petitioner's ineffective assistance of trial counsel claims are preserved only to the extent that they were actually addressed by the state courts during petitioner's postconviction proceedings.

12. *Ground L—Trial Court's Errors in the Admission of Evidence During Mitigation*

Citing the same facts underlying his ineffective assistance of mitigation counsel, Van Hook claims that the trial court made numerous errors in the admission of evidence during the mitigation phase of his trial. There are six sub-parts to this claim, reprinted here verbatim:

1. The trial court erred in admitting the death recommendations of the Cincinnati police department;

2. The trial court erred in admitting the victim impact statement from the victim's family;

3. The trial court erred in admitting testimony regarding Petitioner's lack of remorse;

4. The trial court erred when it penalized Petitioner Van Hook for his failure to testify;

5. The trial court erred in permitting testimony and argument concerning Petitioner's future dangerousness; and

6. The trial court erred in admitting prejudicial "prior bad acts" evidence.

Respondent asserts that all of these claims are barred under Ohio's doctrine of *res judicata* because petitioner failed to raise them on direct appeal. He further asserts that all of the sub-parts but one were subsequently included in petitioner's application to reopen his direct appeal, but that they are still barred because the state courts dismissed that application as untimely.

13. *Ground M—Prosecutorial Misconduct*

Van Hook argues that the verdicts in his case cannot be deemed reliable because of numerous instances of prosecutorial misconduct throughout every phase of the trial. During the innocence-guilt phase of the trial, the prosecutor stated in his opening statement that witness Stephen Wood had seen a white male leaving the victim's apartment, but, when Wood actually testified at trial, he stated that he never saw anyone leave the apartment. Van Hook also alleges that the prosecution made the following improper remarks during the mitigation phase of the trial:

1. that Van Hook was not remorseful;

2. that Van Hook would be dangerous in the future;

3. that photographs of the victim should be considered in determining whether the aggravating factors outweighed the mitigating circumstances;

4. that the facts themselves were an aggravating factor;

5. that a life sentence could be imposed only if the mitigating factors outweighed the aggravating circumstances;

6. that the three judge panel should consider all of the statutory mitigating factors (thereby emphasizing the absence of any that Van Hook did not offer); and

7. that uncharged misconduct on the part of Van Hook should be considered in determining whether to impose the death penalty.

Respondent asserts that this claim is barred under Ohio's doctrine of *res judicata* because petitioner failed to raise it on direct appeal. Respondent further argues that this claim was not revived by its inclusion in petitioner's application to re-open his direct appeal because the state courts dismissed that application as untimely.

14. *Ground N—Ineffective Assistance of Appellate Counsel*

Van Hook claims that his attorneys provided ineffective assistance during both stages of his direct appeal. Complaining that his appellate counsel presented only eight issues to the court of appeals, and only four issues to the Supreme Court of Ohio—one of which had not been raised in the court of appeals below—Van Hook asserts that the following meritorious issues were not presented to the First District Court of Appeals on direct appeal due to the ineffectiveness of his appellate counsel:

1) That Van Hook did not receive a fair trial because of the sensational media coverage surrounding his case;

2) That the colloquium between the trial court and Van Hook during his waiver of his right to a jury trial failed to establish whether the waiver knowing, voluntary, and intelligent;

3) That the prosecution referred to events that had taken place both before and after this crime but that Van Hook had not been charged with;

4) That the trial court had permitted a witness to testify to the contents of a letter that the witness had intentionally destroyed;

5) That the prosecution failed to prove facts that he mentioned in his opening argument;

6) That Van Hook's death sentence was not given a complete proportionality review as required by Ohio law;

7) That the trial court had placed undue emphasis in its opinion on the fact that Van Hook had not testified at trial;

8) That undue pressure was placed on Judge Bettman by the media to impose a harsh sentence on Van Hook;

9) That the trial court erred in failing to rule on whether Van Hook's unsworn statement could be used against him at a later proceeding;

10) That the presiding Judge incorrectly stated the law when Van Hook waived his right to trial by jury;

11) The failure to obtain the assistance of social workers to assist at the mitigation stage of the proceedings;

12) The failure to object to the victim's impact statement being considered by the trial court;

13) The failure to establish the proper definition of borderline personality disorder;

14) The trial court erred in permitting a witness to testify concerning Van Hook's lack of remorse;

15) The failure to keep a complete and full transcript of all proceedings before the trial court;

16) The trial court erred in permitting a witness to testify concerning the future dangerousness of Van Hook;

17) That the trial court considered all the statutory mitigating factors, de-

spite defense counsel specifically limiting the evidence to four of the mitigating factors;

18) The prosecutorial misconduct during the mitigation stage;

19) That the trial court improperly excluded evidence in the mitigation stage;

20) That Van Hook was denied bond prior to trial;

21) The failure to properly conduct the mitigation evaluation and/or the expert was not presented with sufficient information concerning Van Hook;

22) That a state's witness was permitted to testify as to matters that were hearsay in nature;

23) That the trial court improperly combined two of the mitigating factors;

24) That the trial court refused to give any weight in mitigation to Van Hook's borderline personality disorder;

25) That prior to trial the three-Judge panel and the prosecution conducted an ex parte proceeding; and

26) That the trial court reviewed a presentence investigation report prior to sentencing Van Hook.

Respondent asserts that this claim is barred in its entirety because the state courts dismissed petitioner's application to reopen his direct appeal as untimely.

Van Hook asserts that the following meritorious issues were not presented during to the Ohio Supreme Court on direct appeal due to the ineffectiveness of his appellate counsel:

1) The cumulative and prejudicial photographs which were allowed into evidence;

2) The prosecution's undue pressure on Judge Bettman to impose a death sentence against Van Hook;

3) That the trial court erred by overruling Van Hook's motion to increase the burden of proof to beyond all doubt; and

4) That the trial court erred by denying Van Hook's motion to prohibit death qualification of the jury.

Respondent argues that this claim is barred in its entirety because there is no constitutional right to the effective assistance of counsel before the Ohio Supreme Court and because the Ohio Supreme Court recognizes no such remedy.

15. *Ground O—Unconstitutionality of the Death Penalty*

Van Hook's petition mounts a general attack on the constitutionality of Ohio's death penalty scheme. There appear to be 26 separate claims, but it is not necessary for purposes of this order to identify them separately because the Warden does not appear to argue that any of these claims is barred by procedural default.

16. *Ground P—Policies and Practices of Hamilton County Prosecutor's Office and Judicial System in Seeking, Securing, and Imposing Capital Convictions and Death Sentences*

In this ground, Van Hook complains that the policies and practices employed by the Hamilton County Prosecutor's Office and the Hamilton County Judicial System in seeking, securing, and imposing capital convictions violates the cruel and unusual punishment, due process, and equal protection provisions of the United States Constitution. Van Hook argues specifically that the race of the accused and the victim plays a role in the way that the death penalty is sought and imposed in Hamilton County, due in large part to the fact that the Cincinnati Police Department and Prosecutors have virtually uncontrolled discretion in making indictment decisions.

Respondent argues that this claim has been waived because petitioner failed to present it to the appellate court on direct appeal, but subsequently attempted to present it to the Ohio Supreme Court on

direct appeal, in violation of *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph two of the syllabus (1977). That said, it appears that the first time this claim was asserted was in Van Hook's motion for delayed reconsideration of his direct appeal to the court of appeals.

17. *Ground Q—Summary Disposition of Postconviction Actions in Hamilton County*

Van Hook claims that the Ohio state courts have adopted numerous procedural bars which preclude Ohio prisoners from obtaining the constitutionally mandated review of their state and federal constitutional claims under Ohio's postconviction procedure. Van Hook complains that postconviction actions in Hamilton County are routinely subject to summary dismissal without discovery or evidentiary hearings, and that the findings of fact and conclusions of law issued by the trial judges are nothing more than *in toto* adoptions of the proposed findings submitted by the prosecutors. The problem is exacerbated by the fact that these summary dispositions are routinely affirmed by the Hamilton County Court of Appeals, which itself imposes barriers such as page limits on the appellate briefs. Further, the Supreme Court of Ohio never exercises its discretionary review over these capital postconviction appeals. Van Hook asserts that the entire state postconviction process has been rendered meaningless. Respondent asserts no procedural default arguments against this claim.

IV. Procedural Default Discussion

Respondent argues that many of Van Hook's constitutional claims are subject to one or more procedural defaults. Those procedural default arguments may be broadly summarized as follows. First, respondent argues that Grounds J and L.1 were never presented to the Ohio courts, and now, no longer can be. Next, respondent argues that Grounds I, J, L.1–6, and M should have been, but were not, raised on direct appeal and are therefore waived

under Ohio's doctrine of *res judicata*. Respondent further argues that ineffectiveness of appellate counsel claims which were raised for the first time in Van Hook's motion for delayed reconsideration of his direct appeal to the court of appeals are barred because that motion was, without good cause, filed more than ninety days after the journalization of the appellate court's original decision. (Ground N). Similarly, respondent argues that no claims were preserved in Van Hook's motion for delayed reconsideration of his direct appeal to the Supreme Court of Ohio, based on the alleged ineffectiveness of his attorneys at that level, because Van Hook was not entitled to the effective assistance of counsel on direct appeal to the Supreme Court of Ohio. Respondent argues that one claim, Ground P, is waived because that claim was not presented to the First District Court of Appeals on direct appeal, but then was included in Van Hook's appeal to the Ohio Supreme Court. Finally, respondent argues that the only ineffective assistance of trial counsel claims that are viable are Grounds G and K, to the extent that they were discussed by the First District Court of Appeals.

Respondent raises no procedural default arguments against the following claims: Ground A, Ground B, Ground E, Ground F, Ground H, Ground O, and Ground Q. Accordingly, all of these claims will be addressed on the merits. Before addressing respondent's specific procedural default arguments, the Court will discuss briefly Ohio's rule of *res judicata* as it applies to criminal proceedings.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to fairly present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by

which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(*per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to a state court, he has waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not met and that the rule was an adequate and independent state ground for the decision, then the petitioner must demonstrate that there was cause not to comply with the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

Van Hook and respondent do not argue, and it does not otherwise appear to this Court, that any of petitioner's claims is unexhausted. That leaves only waiver issues for the Court to resolve before reaching the merits of this habeas corpus action.

■ As a general matter, a defendant who is convicted in Ohio of a criminal offense has two avenues of attacking that conviction—direct appeal and collateral attack. Claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata. See State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Issues which must be raised in a postconviction action pursuant to R.C. § 2953.21 include claims which do not appear on the face of the record and claims of ineffective assistance of trial counsel where the defendant was represented on direct appeal by the same attorney who represented him at trial. *State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982). In 1992, a third procedure of review commonly employed by Ohio prisoners emerged. Claims of ineffective assistance of appellate counsel must be presented to the appellate court in a motion for delayed reconsideration pursuant to *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992) and Ohio R.App. P. 26(B).

■ In addition to raising each claim in the appropriate forum, a habeas litigant, in order to preserve his constitutional claims for habeas review, must present those claims all the way through the Ohio courts. Thus, the judgment of conviction on direct appeal, and any adverse decision rendered by the trial court in postconviction, must be appealed to both the Ohio Court of Appeals and the Supreme Court of Ohio. Likewise, any adverse decision rendered by the Ohio Court of Appeals on a motion for delayed reconsideration must be timely appealed to the Supreme Court of Ohio. The Court will turn first to those claims which respondent alleges were never presented to the Ohio courts.

### A.

Respondent contends that Grounds J and L.1 were never presented to the Ohio

Courts. According to respondent, Van Hook's claim that he is factually innocent of capital murder because he did not have specific intent to cause the victim's death (Ground J), and Van Hook's claim that the trial court erred in admitting and considering a recommendation by the Cincinnati Police Department that Van Hook be sentenced to death (Ground L.1), were never presented to the Ohio courts. Van Hook insists that he presented both of these claims to the Ohio courts in his amended postconviction action, his motion for delayed reconsideration of his direct appeal to the court of appeals, and his motion for delayed reconsideration of his direct appeal to the Ohio Supreme Court.

Upon review of the record, the Court finds that Van Hook did in fact present his factual innocence claim to the Ohio courts as the twenty-first cause of action in his amended postconviction action, the twenty-sixth assignment of error in his motion for delayed reconsideration of his direct appeal to the court of appeals, and the twenty-sixth proposition of law in his motion for delayed reconsideration of his direct appeal to the Ohio Supreme Court. The Court further finds that Van Hook's claim challenging the trial court's admission of a death recommendation by the Cincinnati Police Department was presented to the Ohio courts as the fortieth cause of action in his amended postconviction action, the forty-third assignment of error in his motion for delayed reconsideration of his direct appeal to the court of appeals, and the forty-third proposition of law in his motion for delayed reconsideration of his direct appeal to the Ohio Supreme Court. That being so, respondent's argument that these claims were never presented to the Ohio courts is not well taken but, that is not to say that these claims are therefore pre-

served for habeas review. The Court will consider later whether Grounds J and L.1 are subject to any other procedural defaults.

### B.

Respondent alleges that many of Van Hook's claims are barred under Ohio's doctrine of res judicata because they were not raised on direct appeal. Specifically, respondent argues that Ground I (presence of Judge Bettman on the three judge panel), Ground L.2 (trial court's admission of the family's victim impact statement), Ground L.3 (trial court's admission of testimony regarding Van Hook's lack of remorse), Ground L.4 (trial court's consideration of Van Hook's failure to testify), Ground L.5 (trial court's consideration of Van Hook's future dangerousness), Ground L.6 (trial court's admission of "prior bad acts"), and Ground M (prosecutorial misconduct) are barred under res judicata.[3] This procedural default argument also applies to Grounds J and L.1.

Van Hook offers a host of arguments against the enforcement of this alleged procedural default. First, he argues that each of these claims was properly raised in postconviction because they had not been preserved at trial. Raising them on direct appeal, Van Hook reasons, would have required his appellate attorneys to draw attention to their own ineffectiveness for not preserving those issues at trial. Van Hook further argues that the procedural default should not be enforced because the Ohio courts did not expressly rely on the res judicata bar in dismissing his claims, insofar as the trial court abdicated its statutory duty to make findings, and instead adopted in toto the findings of fact and conclusions of law submitted by the prosecutor. Such findings, Van Hook argues,

---

**3.** Respondent further argues that Ground P (implementation of capital convictions in Hamilton County) was found by the Ohio Supreme Court not to have been raised at trial. Because it does not appear that Van Hook even attempted to raise this claim in postconviction, but rather, raised it for the first time

in his motion for delayed reconsideration of his direct appeal to the court of appeals, the Court will address that issue in its discussion of whether claims included in Van Hook's motion for delayed reconsideration are preserved for habeas review.

should not be honored by this Court. Van Hook also advances several reasons why Ohio's doctrine of *res judicata* is not an adequate ground upon which to deny relief. *See Maupin, supra.* He argues that Ohio courts do not consistently apply procedural rules, including the rule of *res judicata;* that Ohio's postconviction system does not meet the requirements of due process; that the rule is inadequate to the extent that it requires appellate attorneys to raise issues that would implicate their own ineffectiveness for not preserving those issues at trial; and that the rule does not promote any legitimate state interests. With respect to only Ground I (presence of Judge Bettman on the three judge panel), Van Hook raises the additional argument that the claim should not have been barred by *res judicata* because the claim was supported by evidence *de hors* the record. Finally, Van Hook argues that, in the event that this Court finds that the *res judicata* procedural default argument survives each of the challenges raised above, the default can be excused under the cause-and-prejudice and fundamental miscarriage of justice exceptions. The Court will address each of these arguments individually and then undertake to apply the four-part *Maupin* analysis.

1.

The first argument Van Hook raises against this Court honoring the *res judicata* bar as to Grounds I, J, L, and M is that those claims could not have been raised on direct appeal by virtue of the fact that they had not been preserved at trial. Ohio's contemporaneous objection rule prohibits a court of appeals from reversing a trial court judgment on the basis of any error to which the defense failed to object during trial, absent plain error. *See State v. Williams,* 51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph one of the syllabus (1977)(holding that appellate courts will review only for plain error those claims that were not preserved at trial); *see also* Crim. R. 52(B). Van Hook asserts that

none of the issues presented in the grounds listed above was addressed by objection during the trial. Thus, raising those issues on direct appeal would have required Van Hook's attorneys on direct appeal to argue either that they had been ineffective for failing to object to the various issues, or that the issues amounted to plain error. Van Hook's argument must be rejected.

Van Hook was represented on direct appeal by the same two attorneys who had represented him at trial. Under Ohio law, a petitioner who is represented on direct appeal by the same attorney who represented him at trial has no obligation to raise on direct appeal any ineffective assistance of trial counsel claims. *See State v. Cole,* 2 Ohio St.3d at 113–14, 443 N.E.2d 169; *see also State v. Lentz,* 70 Ohio St.3d 527, 529, 639 N.E.2d 784 (1994)("since 'counsel cannot realistically be expected to argue his own incompetence, *res judicata* does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for postconviction relief.'" (quoting *State v. Carter,* 36 Ohio Misc. 170, 304 N.E.2d 415 (1973))); *City of Dayton v. Hill,* 21 Ohio St.2d 125, 125, 256 N.E.2d 194 (1970). Although an attorney is not required to raise his own ineffectiveness as an independent claim on direct appeal, the question remains whether appellate counsel is excused from raising on direct appeal *any* issue which might suggest that he rendered ineffective assistance of counsel by failing to object to the error during trial.

The clear answer under well-established Ohio law is that such errors could not have been raised on direct appeal—except as plain error—because a contemporaneous objection was not made at trial. That is, the event giving rise to the procedural default occurs at trial, not when appellate counsel fails to raise the constitutional claim as a plain error on direct appeal.

Ohio's contemporaneous objection rule is firmly established and regularly followed. *Scott v. Mitchell*, 209 F.3d 854, 868–871 (6th Cir.2000)(and cases cited therein)(r'hng and suggestion for r'hng en banc denied Jul. 12, 2000). If Van Hook's argument were accepted, Ohio's contemporaneous objection rule would be gutted and the interests strengthened by rule—raising the objection at a time when the trial judge has the opportunity to sustain the objection and accord the defendant a fair trial; the facts relevant to the objection rule are obtained when the witnesses's recollections are freshest and in a forum best suited to make factual findings; and finality—would be undermined.

Van Hook's argument further suffers from another defect. If failure to make a contemporaneous objection was ineffective assistance of counsel, then Ohio provides a remedy for that constitutional deprivation: the defendant may raise it during the first proceeding in which he is represented by new counsel—either on direct appeal or in postconviction proceedings. On the other hand, if the failure to object did not amount to ineffective assistance of counsel, then there is no reason why trial counsel would not raise the claim as a plain error on direct appeal. And, in fact, defense counsel in Ohio do raise plain error claims on direct appeal in many criminal cases, including death penalty appeals. *See, e.g., State v. Chinn*, 85 Ohio St.3d 548, 554, 709 N.E.2d 1166 (1999); *State v. Williams*, 74 Ohio St.3d 569, 579, 660 N.E.2d 724 (1996).

2.

 Another argument advanced by Van Hook against this Court's enforcement of *res judicata* against Grounds I, J, L, and M is that the doctrine is not an adequate ground upon which to decline relief. Citing the trial court's adoption *in toto* of the state's proposed findings of fact and conclusions of law in dismissing his postconviction action, petitioner argues that the state courts did not expressly rely on *res judicata* in dismissing the claims set forth above. In assailing the adequacy of

*res judicata*. Van Hook points to the alleged inconsistency with which procedural rules are enforced by Ohio courts in capital cases, the alleged failure of Ohio's postconviction system to meet the requirements of due process, and the lack of legitimate state interests promoted by the doctrine of *res judicata*. Van Hook's arguments are not well taken.

The Honorable Edmund A. Sargus, Jr. recently discussed *res judicata* and the adequate and independent doctrine in *Sowell v. Collins*, Case No. C–1–94–237 (S.D.Ohio Feb. 18, 1998). He wrote:

When a state argues that habeas corpus review of a claim is precluded due to the petitioner's failure to observe a state procedural rule, this Court is required to determine, among other things, whether the state procedural rule is an adequate and independent ground upon which to preclude relief. *Maupin v. Smith*, *supra*, 785 F.2d at 138. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423, 111 S.Ct. 850 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)). *See also Barr v. City of Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 12 L.Ed.2d 766 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964).

\* \* \* \* \* \*

[T]he determination of whether a state procedural rule is an adequate ground

for denying relief necessarily focuses on the procedural rule at issue, namely, the *Perry* rule. This Court has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. The doctrine of *res judicata* is stated in unmistakable terms in countless Ohio decisions, and Ohio courts have consistently refused, in reliance on that doctrine, to review the merits of claims. *See State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169; *State v. Ishmail*, 67 Ohio St.2d 16, 423 N.E.2d 1068. Further, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. That Ohio courts may on occasion elect to ignore or forgive non-compliance with its procedural rules has no bearing on the general question of whether the *Perry* rule is adequate. This Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

*Sowell*, at 48–49.

The Court agrees with this reasoning and thus, to the extent that Van Hook is challenging the adequacy of Ohio's *res judicata* doctrine, his argument is not well taken.

 Of course, should the Ohio courts fail to provide an individual defendant with a fair postconviction review, a federal habeas court can independently review the merits of the constitutional claims that the state courts failed to fairly review. *See* 28 U.S.C. § 2254(d) and (e). But Van Hook failed to raise at trial or on direct appeal certain issues that plainly appeared on the face of the record. Finally, insofar as Van Hook complains about the practice of the Hamilton County Courts of adopting *in toto* proposed findings of fact and conclusions of law submitted by the prosecutor, several federal courts have held that such a practice does not necessarily undermine the presumption of correctness of those findings. *See Correll v. Thompson*, 63 F.3d 1279, 1293 (4th Cir.1995), *cert. de-*

*nied, Correll v. Jabe*, 516 U.S. 1035, 116 S.Ct. 688, 133 L.Ed.2d 593 (1996); *McBride v. Sharpe*, 25 F.3d 962, 971 n. 12 (11th Cir.1994), *cert. denied*, 513 U.S. 990, 115 S.Ct. 489, 130 L.Ed.2d 401 (1994); *but see Nethery v. Collins*, 993 F.2d 1154, 1157 n. 8 (5th Cir.1993), *r'hng denied*, 998 F.2d 1015 (5th Cir.1993), *cert. denied*, 511 U.S. 1026, 114 S.Ct. 1416, 128 L.Ed.2d 87 (1994). In sum, the Court rejects Van Hook's sweeping argument that the state courts did not expressly enforce *res judicata* by adopting the prosecutor's proposed findings and that Ohio's doctrine of *res judicata* is not an adequate ground for denying relief.

3.

 With respect to only Ground I, Van Hook argues that this claim was properly raised in postconviction, and therefore not subject to the bar of *res judicata*, because the claim involved evidence outside the record. That is, Van Hook argues that this claim met one of the exceptions to the *Perry* rule of *res judicata*—namely, constitutional claims based on evidence outside the trial record. *See State v. Milanovich*, 42 Ohio St.2d 46, 325 N.E.2d 540 (1975). Van Hook argues in Ground I that he was unduly prejudiced by the presence of Judge Bettman on his three-judge panel. Van Hook asserts that Judge Bettman was under some public pressure, of sorts, to come across as tough on crime, and that this pressure may have compelled him to vote to convict petitioner and impose the death penalty. Van Hook presented this allegation to the state courts as the fifteenth cause of action in his amended postconviction action. State Court Record, Vol.V, Part 2 of 3, Tab 3. In support, Van Hook offered several newspaper articles and editorials concerning Judge Bettman; some involved petitioner's case, while others involved other criminal trials over which Judge Bettman had presided. *Id.* at exhibit 4. The issue before the Court is whether Van Hook violated the doctrine of *res judicata* by presenting this claim in

postconviction proceeding. The trial court and the Ohio Court of Appeals both held that this claim was *res judicata* because it could have been raised at trial and on direct appeal.

Whether or not a claim is required to be raised at trial and subsequently litigated on direct appeal if necessary, in a case such as this, would appear to turn on the degree to which the evidence supporting that claim is available to the defendant during his trial. There is Ohio case law supporting the position that, in order to overcome the bar of *res judicata*, evidence attached in support of a claim not raised on direct appeal must be relevant, material, *and* unavailable to the petitioner in time to support his claim at trial or on direct appeal. *See, e.g., State v. Scudder*, 131 Ohio App.3d 470, 475, 722 N.E.2d 1054 (Ohio App. 10 Dist.1998); *State v. Lawson*, 103 Ohio App.3d 307, 315, 659 N.E.2d 362 (Ohio App. 12 Dist.1995). Although the evidence supporting Van Hook's claim, *i.e.,* newspaper articles from the summer of 1985, were not part of the trial record, Van Hook has not demonstrated, and it cannot seriously be argued, that this evidence was unavailable to him at the time of his trial. Thus, it would appear that the evidence Van Hook required to support his allegations was readily available. For that reason, the Court concludes that he was required to raise this allegation at trial and on direct appeal and that he failed to do, thereby violating Ohio's doctrine of *res judicata*.

### 4.

Having addressed and rejected the various arguments offered by Van Hook against enforcement of *res judicata*, the Court will now apply the four-part *Maupin* test with respect to the grounds alleged by respondent to have been defaulted under Ohio's doctrine of *res judicata*. The first part of the *Maupin* test requires the Court to determine whether a procedural rule is applicable to Van Hook's claims and, if so, whether petitioner violated that rule. As the Court noted *supra*, claims appearing on the face of the record must be raised on direct appeal or they will be waived under Ohio's doctrine of *res judicata*. *See State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). The issues asserted in claims I, J, L, and M all involve matters on the face of the record and, therefore, could have been asserted on direct appeal. The Court has rejected Van Hook's argument that he was not required to raise claims J, L, and M on direct appeal because they were not preserved at trial and raising them would have required his appellate attorneys to draw attention to their own ineffectiveness. The Court has likewise rejected Van Hook's argument that he was excused from raising claim I on direct appeal because it relied on evidence outside the trial record. The Court concludes, therefore, that the first part of the *Maupin* test has been satisfied.

The second part of the *Maupin* test requires the Court to determine whether the state courts actually enforced the procedural rule. Even a cursory review of the decisions issued by the trial court and appellate court during Van Hook's postconviction proceedings reveals that those courts clearly and expressly dismissed the issues raised in grounds I, J, L, and M on the ground of *res judicata*.

The Court further finds that *res judicata* is an adequate and independent state ground upon which to deny relief. The doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions, and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982); *State v. Ishmail*, 67 Ohio St.2d 16, 423 N.E.2d 1068 (1981): *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967). Further, the doctrine of *res judicata* serves the state's interests in finality, and in ensuring that claims are adjudicated at the earliest possible opportunity. Finally, the doctrine of *res judicata* does not rely on or otherwise implicate federal law.

██ The Court having determined that grounds I, J, L, and M are subject to procedural default and that the procedural default is an adequate and independent ground for denying relief, it is incumbent upon Van Hook to demonstrate both cause for his failure to comply with the state procedural rule as well as actual prejudice from the underlying constitutional claims. Van Hook has not briefed cause or prejudice. Consequently, the Court determined that grounds I, J, L, and M are procedurally barred. Nonetheless, out of an abundance of caution, if petitioner has a good faith argument that there is cause for these procedural defaults and resulting prejudice, (or that the fundamental miscarriage of justice/actual innocence exception applies), he may make that argument in his merits brief. Counsel are admonished that the time for making a cause and prejudice argument is when procedural bar is raised and briefed and that, properly, such arguments are waived if not made then.

### C.

The next procedural default argument raised by respondent involves Van Hook's motion for delayed reconsideration of his direct appeal alleging ineffective assistance of appellate counsel. Respondent argues that neither Van Hook's claim of ineffective assistance of appellate counsel itself, (Ground N), nor any of the habeas corpus grounds raised for the first time, (Grounds C, D, and P),[4] in Van Hook's motion for delayed reconsideration of his direct appeal to the court of appeals, are preserved for review because the state courts dismissed petitioner's motion as untimely. Similarly, respondent argues that none of the claims superfluously included after having been raised in previous state court proceedings, (Grounds I, L, and M), were revived by virtue of being included in Van Hook's motion for delayed reconsideration. The Court will first determine whether Van Hook committed procedural default in connection with his motion for delayed reconsideration, and then address whether any of Van Hook's habeas corpus grounds were preserved by virtue of having been included in his motion for delayed reconsideration.

As the Court noted above in its introductory remarks, claims of ineffective assistance of appellate counsel must be presented to the court of appeals in a motion for delayed reconsideration within ninety days of the journalization of the appellate court's judgment dismissing the appeal. *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992); Ohio R.App. P. 26(B)(effective July 1, 1993). Respondent argues that, because the appellate court in the instant case declined to reach the merits of either Van Hook's claim of ineffective assistance of appellate counsel or the new assignments of error raised thereunder, on the basis of a procedural rule—namely, that the motion was filed outside the ninety-day limitation period without good cause—all of those claims are barred by procedural default. Van Hook insists that he complied with *State v. Murnahan,* and with new Rule 26(B), when he filed his motion for delayed reconsideration on April 9, 1993. He further argues that, prior to the *Murnahan* decision, there was no firmly established state-wide procedure for raising claims of ineffective assistance of appellate counsel.

This issue was recently addressed in *Holloway v. Collins,* Case No. C–1–94–229, (S.D.Ohio Sep. 30, 1998), where the Honorable Algenon Marbley wrote:

> levels of Van Hook's direct appeal proceedings. Respondent's argument is substantiated by the record and Van Hook does not appear to argue otherwise. Van Hook asserts only that he preserved Ground P by including it in his motion for delayed reconsideration to the court of appeals.

4. With respect to Ground P, *i.e.,* Van Hook's challenge against the policies and practices of the Hamilton County Prosecutor's Office in seeking and securing capital convictions, respondent argued that this claim had been waived because it had not been raised at both the court of appeals *and* Ohio Supreme Court

[D]ue to the existence of controlling precedent in the First Appellate District, namely *State v. Rone*, Case No. C–820640, 1983 WL 5172 (Hamilton Co. App., August 31, 1983), defendants in that district were on notice that ineffective assistance of appellate counsel claims could be heard and decided in the Court of Appeals by way of a motion to reconsider. Further, although Holloway was represented by the same counsel during his appeal to the Ohio Supreme Court and in connection with the filing of a petition for writ of *certiorari* to the United States Supreme Court as during his first appeal as of right, that representation ended not later than July 3, 1989, when the *cert.* petition was denied. He was able to file a post-conviction petition raising ineffective assistance of appellate counsel issues in early 1990. The Court does not believe that the Ohio courts were obligated to wait another two years for him to present these claims in a procedural device specifically approved in Hamilton County, and that they were entitled to apply the sanction of dismissal to his *Murnahan* petitioner as a legitimate response to its untimely filing.

*Holloway, supra*, at 24. The Honorable James L. Graham reached a similar result in both *State v. Beuke*, Case No. C–1–92–507 (October 19, 1995), and *Byrd v. Collins*, Case No. C–1–94–167 (July 28, 1995). The Honorable Edmund A. Sargus, Jr. reached a different result, however, in *Sowell v. Collins*, Case No. C–1–94–237 (February 18, 1998).

Van Hook's direct appeal became final no later than March 27, 1989, when the United States Supreme Court denied *certiorari* from the Supreme Court of Ohio's November 9, 1988 decision affirming Van Hook's conviction. At that time, it was clearly established in the Ohio Court of Appeals for the First District that claims of ineffective assistance of counsel on appeal could not be raised in postconviction proceedings and that they could be raised in a motion to reopen the direct appeal. *State v. Rone*, No. C–820640, 1983 WL 5172 (Ohio Ct.App. 1 Dist., Aug. 31, 1983); *see e.g., State v. Zuern*, Nos. C–900481, C–910229, 1991 WL 256497 (Ohio Ct.App. 1 Dist., Dec. 4, 1991).

Nonetheless, Van Hook raised his ineffective assistance of appellate counsel claims in a postconviction action filed December 27, 1989. The postconviction petition was denied April 26, 1990. If Van Hook's postconviction counsel somehow were unaware of or had inadvertently overlooked the well-established First District case law, they were put on notice of *Rone* by the trial court's April 26, 1990 decision. *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), was decided on February 19, 1992. Van Hook was then on notice that the remedy statewide for ineffective assistance of appellate counsel claims was a motion to reopen his direct appeal. Still, Van Hook took no action to pursue that remedy. On October 21, 1992, the Ohio Court of Appeals for the First District affirmed the trial court's dismissal of Van Hook's ineffective assistance of appellate counsel claims based on *Murnahan* "and our longstanding decision in *State v. Rone* (Aug. 31, 1983), Hamilton App. No. C–820640, 1983 WL 5172, unreported." *State v. Van Hook*, 1992 WL 308350, at *3.

On April 8, 1993, over thirteen months after the date that *Murnahan* was decided and five and a half months after the First District's decision affirming the trial court's denial of his postconviction action, Van Hook finally filed a motion to reopen his direct appeal. The Court of Appeals denied the motion because Van Hook failed to show good cause for his delay in filing the motion for reopening.

Van Hook's counsel had known since at least April 26, 1990—and should have known in March 1989 when Van Hook's judgment of conviction became final—that postconviction was not an available remedy for claims of ineffective assistance of appellate counsel in the First Appellate Dis-

trict, and that a motion to reopen his direct appeal was a remedy. In any event, *Murnahan* was decided on February 19, 1992. By then, Van Hook had fully briefed his ineffective assistance of appellate counsel claims in the postconviction appeal pending in the Ohio Court of Appeals for the First Appellate District. There was no impediment to his counsel utilizing that brief as a basis to promptly file a motion to reopen his direct appeal. Van Hook failed to do so.

*Murnahan* itself told Van Hook how to pursue the remedy of a motion to reconsider. First, it held that ineffective assistance of counsel could be presented to the court of appeals in a motion for reconsideration under Ohio R.App. P. 26. *Murnahan*, 63 Ohio St.3d at 65 and n. 3, 584 N.E.2d 1204. Second. *Murnahan* recognized that Rule 26 provided that motions to reconsider had to be filed no later than ten days after announcement of the court's decision, but *Murnahan* further acknowledged that:

> [S]ince claims of ineffective assistance of appellate counsel may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for reconsideration in the court of appeals or this court, it may be necessary for defendants to request delayed reconsideration.

*Murnahan*, 63 Ohio St.3d at 65–66, 584 N.E.2d 1204. The *Murnahan* decision further recognized that Rule 26 did not expressly provide for delayed reconsideration, so it recommended to the Rules Advisory Committee that Ohio R.App. P. 14(B) be amended "to better serve claimants" who allege ineffective assistance of counsel on appeal. *Murnahan*, 63 Ohio St.3d at 66 n. 6, 584 N.E.2d 1204. At the time *Murnahan* was decided and at the time petitioner finally filed his motion for reconsideration, Ohio R.App. P. 14(B) provided that the court of appeals could "for good cause shown" grant a motion to "enlarge or reduce the time prescribed by these rules ... for doing any act, or may permit an act to be done after the expiration of such time...." Thus, once *Murnahan* was announced, petitioner was on notice that claims of ineffective assistance of appellate counsel had to be raised by a delayed motion for reconsideration under Ohio R.App. P. 26 and that, to extend the ten-day time limit for a motion for reconsideration, he had to file a motion for enlargement of time under Ohio R.App. P. 14(B) demonstrating "good cause" for the extension. *See also State v. Reddick,* 72 Ohio St.3d 88, 90, 647 N.E.2d 784 (1995).

Rule 26 was amended effective July 1, 1993 to provide that an application to reopen a decision issued on direct appeal alleging ineffective assistance of appellate counsel must be filed "within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." Ohio R.App. P. 26(B)(1). Even though he filed his motion for reconsideration on April 8, 1993, over two and a half months prior to the effective date of amended Ohio R.App. P. 26(B), Van Hook argues that he had ninety days from July 1, 1993 to file his motion to reconsider. That argument ignores the facts that his criminal conviction became final in March 1989 and that, when he filed his motion for delayed reconsideration, his motion was governed by former Ohio Appellate rules 14(B) and 26. Citing *State v. White,* 73 Ohio St.3d 348, 652 N.E.2d 1020 (1995); *State v. Graham,* 71 Ohio St.3d 331, 643 N.E.2d 1097 (1994); *State v. Spaulding,* 71 Ohio St.3d 228, 643 N.E.2d 112 (1994); *State v. Peeples,* 71 Ohio St.3d 349, 643 N.E.2d 1112 (1994); *State v. Edwards,* 73 Ohio St.3d 321, 652 N.E.2d 999 (1995); Van Hook asserts that the Supreme Court of Ohio has held that, if a court of appeals' judgment was entered prior to July 1, 1993, an application for delayed reconsideration would be timely filed if filed within ninety (90) days of July 1, 1993, the effective date of App. R. 26(B). None of these cases stand for that proposition. All are one line, *per curiam* deci-

sions that affirm an Ohio appellate court's decision denying a motion for delayed reconsideration of an appellate judgment entered a year or more prior to the decision in *Murnahan*. The motions for delayed reconsideration had all been filed more than ninety days after July 1, 1993. For a variety of reasons, including that fact, the Ohio appellate courts found in each case that the defendant had failed to establish "good cause" for his delay in seeking reconsideration. In each case, the Supreme Court of Ohio's *per curiam* decision read: "We affirm the judgment of the court of appeals for the reasons stated in its opinion." Not only did Van Hook mischaracterize these decisions, he also failed to cite to this Court a decision reaching a directly opposite conclusion from that he asserts. In *State v. Reddick, supra,* 72 Ohio St.3d at 90, 647 N.E.2d 784, the Supreme Court of Ohio held that, at least since its decision in *Murnahan,* defendants have been on notice that there is "a requirement to show good cause for failure to file a timely claim of ineffective assistance of appellate counsel...." The Supreme Court held that revised Ohio R.App. P. 26(B), effective July 1, 1993:

> [S]ucceeds and incorporates the good-cause requirement of *Murnahan* and former App.R. 14(B). Accordingly, an applicant who seeks to reopen an appellate judgment journalized before July 1, 1993 may not simply rely on the fact that App.R. 26(B) did not exist within the ninety days following journalization of the appellate judgment, but must show good cause why he or she did not attempt to invoke the procedures available under former App.R 26 and 14(B).

*Id.* *Reddick* has been repeatedly followed by the Supreme Court of Ohio. *E.g., State v. Davis,* 86 Ohio St.3d 212, 714 N.E.2d 384 (1999); *State v. Pierce,* 74 Ohio St.3d 453, 659 N.E.2d 1252 (1996); *State v. Wickline,* 74 Ohio St.3d 369, 371, 658 N.E.2d 1052 (1996); *State v. Lechner,* 72 Ohio St.3d 374, 375, 650 N.E.2d 449 (1995).

■ Considering the above, the Court cannot say that the Ohio appellate court's determination that Van Hook failed to demonstrate good cause for his failure to file his motion for reconsideration earlier than he did was unreasonable. Van Hook had been on notice of his available Ohio remedy for more than thirteen months before he filed his motion for reconsideration. There was no impediment to his filing the motion within a short time after *Murnahan* was announced. He was represented by counsel and, the ineffective assistance of appellate counsel claims had previously been fully briefed for his post-conviction appeal.

For all of these reasons, it would appear that Van Hook's allegations of ineffective assistance of appellate counsel, *i.e.,* Ground N, are subject to procedural default, absent a showing of cause sufficient to excuse the default. Further, any of the constitutional claims that Van Hook asserts he preserved by including them in his *"Murnahan"* motion—grounds C, D, I, L, M, and P—are arguably waived as well. Again, Van Hook has not briefed cause and prejudice. Because further briefing will be necessary anyway, and because new decisions by the United States Supreme Court and the Court of Appeals for the Sixth Circuit might be relevant to these issues, the Court will allow Van Hook the opportunity to attempt to demonstrate cause and to demonstrate what effect, if any, new decisions have on the procedural default issues raised in this habeas corpus action. See *Edwards v. Carpenter,* 529 U.S. 446, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *White v. Schotten,* 201 F.3d 743, 745 (6th Cir.2000)(r'hng and suggestion for r'hng en banc denied, May 10, 2000).

## D.

■ Respondent also argues that no claims raised for the first time, or superfluously included in Van Hook's motion for delayed reconsideration of his direct appeal to the Ohio Supreme Court are viable

in this habeas corpus action. The gravamen of respondent's argument is that no such remedy exists under Ohio law. Respondent's argument is well taken.

Under Ohio law, non-capital defendants enjoy a direct appeal as of right only to the court of appeals; on the other hand, capital defendants, were, at the relevant time, entitled to a direct appeal as of right not only to the court of appeals but also to the Supreme Court of Ohio. Van Hook argued in his motion for delayed reinstatement that, because *Murnahan* entitles a defendant to reopen his direct appeal as of right in the court of appeals on the basis of ineffective assistance of counsel at that level, *Murnahan* must be read to afford capital defendants the same right to reopen their direct appeal as of right in the Supreme Court of Ohio on the basis of counsel's ineffectiveness before that court. Respondent insists that there is no such remedy under Ohio law, and that appears to be so—the Supreme Court of Ohio has never recognized this remedy, nor has it indicated in any way that *Murnahan* should be extended in the manner proposed by Van Hook.

Even assuming that any of the constitutional claims that Van Hook seeks to present here could have been fairly presented to the Ohio Supreme Court in a motion for delayed reconsideration of Van Hook's direct appeal to that court, the fact remains that those claims were not properly raised in the appellate court below. The Ohio Supreme Court does not typically consider claims not raised before the Court of Appeals. *See State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364, paragraph two of the syllabus (1977). Thus, even assuming that the Ohio Supreme Court recognized the remedy of a motion for delayed reconsideration, it is highly unlikely that the court would have addressed any claims that had not been asserted in the appellate court below.

For the foregoing reasons, the Court rejects Van Hook's suggestion that he preserved any of his habeas corpus grounds by including them in his motion for delayed reconsideration of his direct appeal to the Ohio Supreme Court.

### E.

A more specific procedural default argument raised by respondent concerns Van Hook's ineffective assistance of trial counsel claims. Van Hook argues in Ground G that his attorneys provided ineffective assistance during the guilt phase of his trial, and in Ground K that they provided ineffective assistance during the mitigation phase of his trial. Respondent argues that Van Hook's ineffective assistance of trial counsel claims are viable only to the extent that they were discussed by the First District Court of Appeals in postconviction. Respondent's argument is not well taken.

 Each ineffective assistance of trial counsel claim that Van Hook presented to the state courts in his postconviction petition and in his appeal from the denial of that petition has been exhausted and may be considered in federal habeas corpus. Respondent's brief does not identify any ineffective assistance of counsel claim alleged in the amended habeas petition that was not fairly presented to the Ohio courts. Accordingly, it appears that Van Hook's ineffective assistance of trial counsel claims, *i.e.*, Grounds G and K, have been exhausted, and they will be reviewed on the merits.

### F.

Based upon the foregoing, it would appear that the following grounds presented in the petition are barred by procedural default: Grounds C, D, I, J, L, M, N, P. As noted above, however, Van Hook has failed to even attempt to demonstrate that those defaults might be excused under either the cause-and-prejudice test or the narrow fundamental miscarriage of justice/actual innocence exception. Out of an excess of caution and recognizing that several habeas corpus decisions have been issued by the United States Supreme Court and the

Court of Appeals for the Sixth Circuit since the parties last briefed the procedural bar issues, the Court will permit petitioner to present any arguable claim of cause and prejudice in his merits brief. That being so, the parties are DIRECTED to contact the Magistrate Judge within ten (10) days of the date of this Order to schedule a status conference for purposes of establishing a merits briefing schedule.

## APPENDIX

### A. Trial and Direct Appeal

Robert Van Hook was indicted by the Hamilton County Grand Jury on April 18, 1985 on one count of aggravated murder, with a death penalty specification, and one count of aggravated robbery. On April 23, 1985, he entered a written plea of not guilty by reason of insanity, which triggered court-ordered psychiatric evaluations. Van Hook waived his right to a jury trial, and was tried, pursuant to Ohio law, by a three-judge panel. The trial commenced on July 15, 1985, and, on July 29, 1985, the three-judge panel found him guilty as charged. Following a two-day break, the mitigation hearing commenced. On August 8, 1985, the three-judge panel sentenced Van Hook to death on the aggravated murder count, and a prison term of ten (10) to twenty-five (25) years on the aggravated robbery count.

Represented by the same two attorneys who represented him at trial, Van Hook appealed the judgment to the Ohio Court of Appeals for the First Appellate District, and raised the following assignments of error:

*FIRST ASSIGNMENT OF ERROR*
THE TRIAL COURT SUBSTANTIALLY ERRED TO THE PREJUDICE OF DEFENDANT–APPELLANT IN REFUSING TO GRANT HIS MOTION TO SUPPRESS STATEMENT.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT*
Once a suspect has invoked his right to counsel, it is mandatory that further interrogation by law enforcement cease until such time as counsel has been made available to the suspect, unless the suspect initiates further conversation with law enforcement, and any inculpatory statement made by a suspect in response to police-initiated communication after the right to counsel has been invoked must be suppressed.

*SECOND ASSIGNMENT OF ERROR*
THE TRIAL COURT ERRED IN ADMITTING THOSE PARTS OF THE CONFESSION WHICH DEALT WITH THE AGGRAVATED BURGLARY.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT*
The doctrine of corpus delicti required that the state present some other evidence of the aggravated robbery before the confession was admissible.

*THIRD ASSIGNMENT OF ERROR*
THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT–APPELLANT IN OVERRULING THE MOTION IN LIMINE WHICH PRECLUDED PHOTOGRAPHS AND CORONER'S SLIDES AND IN ADMITTING THE PHOTOGRAPHS.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT*
Where the Appellant is willing to stipulate cause of death, asserts no affirmative defense such as self defense or accidental killing and identification of the victim is not at issue, gruesome photographs are prejudicial and should not be admitted.

*FOURTH ASSIGNMENT OF ERROR*
THE TRIAL COURT SUBSTANTIALLY ERRED TO THE PREJUDICE OF DEFENDANT–APPELLANT IN REFUSING TO GRANT HIS MOTION

TO PROHIBIT DEATH QUALIFICATION OF THE JURY.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT*

Allowing the prosecution to challenge for cause any prospective juror who indicates that he could not impose a death sentence under any circumstances results in an unconstitutional deprivation of every Defendant's right to a fair trial by jury under the Sixth and Fourteenth Amendments of the United States Constitution.

*FIFTH ASSIGNMENT OF ERROR*

THE CONDUCT OF THE PROSECUTOR AT THE BEGINNING OF DEFENDANT–APPELLANT'S TRIAL RESULTED IN PRESSURING ONE MEMBER OF THE THREE–JUDGE PANEL TO THE POINT THAT HE COULD NO LONGER BE FAIR AND IMPARTIAL THEREBY DENYING DEFENDANT–APPELLANT A FAIR TRIAL.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT*

When a prosecutor unfairly attempts to pressure one of the triers of fact into adopting a position concerning the issue of the death penalty as it applies to the case about to be tried at the beginning of the trial, plain error is committed and the resulting conviction and death sentence must be reversed.

*SIXTH ASSIGNMENT OF ERROR*

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT–APPELLANT IN OVERRULING THE MOTION TO INCREASE THE BURDEN OF PROOF TO BEYOND ALL DOUBT.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT*

In the sentencing phase of a capital case, the standard of proof should be, that the aggravating factor or factors must outweigh "beyond all doubt" the mitigating factors.

*SEVENTH ASSIGNMENT OF ERROR*

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT–APPELLANT IN OVERRULING THE MOTION TO STRIKE THE DEATH PENALTY SPECIFICATION AND TO IMPOSE A LIFE SENTENCE FOR THE REASON THAT THE OHIO STATUTORY SCHEME FOR THE IMPOSITION OF THE DEATH PENALTY IS UNCONSTITUTIONAL.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 1*

Where the same felony forms the basis for the elevation of the murder to aggravated murder, and then to elevate the aggravated murder to capital murder aggravated murder, the use of that felony fails to narrow the cases of offenders eligible for the death penalty and makes meaningful appellate review of the sentence impossible, rendering the death sentence under the statute unconstitutional.

*ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 2*

Once the felony underlying the *aggravated murder* charge has been used to obtain a conviction of that offense, it may not constitutionally be used as an aggravating factor for sentencing purposes, where it was the basis for, and an element of, the aggravated felony murder.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 3

The provisions of Criminal Rule 11(C)(3) permitting a trial court to dismiss specifications upon a guilty plea to aggravated murder only under the nebulous and undefined concept "in the interest of justice" makes the Ohio death penalty statutes and provisions unconstitutional.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 4

The Ohio statutes are constitutionally infirm in that they do not permit the extension of mercy by the jury or three-judge panel even though aggravating factors outweigh mitigating forces.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 5

The death penalty is so totally without penological justification that it results in the gratuitous infliction of suffering, and that, consequently, there is no rational state interest served by the ultimate sanction.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 6

The Ohio capital sentencing scheme is unconstitutional because it provides no standards for sentencing or review at several significant stages of the process, and consequently, death sentences are imposed and reviewed without sufficient statutory guidance to juries, trial courts and reviewing courts to prevent the unconstitutional arbitrary and capricious infliction of the death penalty.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 7

The Eighth and Fourteenth Amendments to the Constitution of the United States prohibit sentences which are disproportionately severe in relation to the crime committed, sentences visited upon others for the same crime in the same and other jurisdictions.

## EIGHTH ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN ENTERING A JUDGMENT AND SENTENCE THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 1

The verdict that Appellant was guilty, rather than not guilty by reason of insanity, was against the manifest weight of the evidence.

## ISSUE PRESENTED FOR REVIEW AND ARGUMENT NO. 2

Where the Appellant presents psychiatric testimony of a personality disorder, the court should consider such testimony as a mitigating factor under both 2929.04(B)(3) and 2929.04(B)(7) and not preclude said testimony solely under 2929.04(B)(3).

On May 13, 1987, the court of appeals affirmed the judgment against petitioner in full. After conducting its own independent review, the court of appeals also concluded that the aggravating factors substantially outweighed the mitigating circumstances, and that the death sentence was not inappropriate or disproportionate. State v. Van Hook, C–85–0565, 1987 WL 11202 (Hamilton Cy. Ct.App. May 13, 1987), exhibit 26 vol.II to petitioner's appendix of the state court record.

The same two attorneys subsequently initiated an appeal to the Supreme Court of Ohio, but, on July 13, 1987, Van Hook filed a pro se motion to dismiss his attorneys and appoint new counsel. Van Hook argued that his attorneys had failed to raise numerous laudable issues and that he was unable to assert the ineffectiveness of his attorneys until they were removed from his case. On September 2, 1987, the Ohio Supreme Court denied petitioner's motion to dismiss his attorneys. Exhibit 13 vol.III to petitioner's appendix of the state court record. Van Hook's attorneys

proceeded, accordingly, to prosecute his appeal to the Supreme Court of Ohio and raised the following propositions of law:

*PROPOSITION OF LAW NO. I*

ONCE A SUSPECT HAS INVOKED HIS RIGHT TO COUNSEL IT IS MANDATORY THAT FURTHER INTERROGATION BY LAW ENFORCEMENT CEASE UNTIL SUCH TIME AS COUNSEL HAS BEEN MADE AVAILABLE TO THE SUSPECT, UNLESS THE SUSPECT INITIATES FURTHER CONVERSATION WITH LAW ENFORCEMENT, AND ANY INCULPATORY STATEMENT MADE BY A SUSPECT IN RESPONSE TO POLICE INITIATED COMMUNICATION AFTER THE RIGHT TO COUNSEL HAS BEEN INVOKED MUST BE SUPPRESSED.

*PROPOSITION OF LAW NO. II*

THE DOCTRINE OF CORPUS DELICTI REQUIRED THAT THE STATE PRESENT SOME OTHER EVIDENCE OF THE AGGRAVATED ROBBERY BEFORE ADMITTING THOSE PARTS OF THE CONFESSION.

*PROPOSITION OF LAW NO. III*

WHERE THE APPELLANT PRESENTS PSYCHIATRIC TESTIMONY OF A PERSONALITY DISORDER, THE COURT SHOULD CONSIDER SUCH TESTIMONY AS A MITIGATING FACTOR UNDER BOTH SECTION 2929.04(B)(3) AND SECTION 2929.04(B)(7) AND NOT PRECLUDE SAID TESTIMONY BECAUSE IT DOES NOT MEET THE CRITERIA OF A MENTAL DISEASE OR DEFECT.

*PROPOSITION OF LAW NO. IV*

1. WHERE THE SAME FELONY FORMS THE BASIS FOR THE ELEVATION OF THE MURDER TO AGGRAVATED MURDER, AND THEN TO ELEVATE THE AGGRAVATED MURDER TO CAPITAL AGGRAVATED MURDER, THE USE OF THAT FELONY FAILS TO NARROW THE CLASS OF OFFENDERS ELIGIBLE FOR THE DEATH PENALTY AND MAKES MEANINGFUL APPELLATE REVIEW OF THE SENTENCE IMPOSSIBLE, RENDERING DEATH SENTENCES UNDER THE STATUTE UNCONSTITUTIONAL.

2. ONCE THE FELONY UNDERLYING THE *AGGRAVATED MURDER* CHARGE HAS BEEN USED TO OBTAIN A CONVICTION OF THAT OFFENSE, IT MAY NOT CONSTITUTIONALLY BE USED AS AN AGGRAVATING FACTOR FOR SENTENCING PURPOSES, WHERE IT WAS THE BASIS FOR, AND AN ELEMENT OF, THE AGGRAVATED FELONY MURDER.

3. THE PROVISIONS OF CRIMINAL RULE 11(C)(3) PERMITTING A TRIAL COURT TO DISMISS SPECIFICATIONS UPON A GUILTY PLEA TO AGGRAVATED MURDER ONLY UNDER THE NEBULOUS AND UNDEFINED CONCEPT "IN THE INTEREST OF JUSTICE" MAKES THE OHIO DEATH PENALTY STATUTES AND PROVISIONS UNCONSTITUTIONAL.

4. THE OHIO STATUTES ARE CONSTITUTIONALLY INFIRM IN THAT THEY DO NOT PERMIT THE EXTENSION OF MERCY BY THE JURY OR THREE-JUDGE PANEL EVEN THOUGH AGGRAVATING FACTORS OUTWEIGH MITIGATING FORCES.

5. THE DEATH PENALTY IS SO TOTALLY WITHOUT PENOLOGICAL JUSTIFICATION THAT IT RESULTS IN THE GRATUITOUS INFLICTION OF SUFFERING,

AND CONSEQUENTLY, THERE IS NO RATIONAL STATE INTEREST SERVED BY THE ULTIMATE SANCTION.

6. THE OHIO CAPITAL SENTENCING SCHEME IS UNCONSTITUTIONAL BECAUSE IT PROVIDES NO STANDARDS OF RESENTENCING OR REVIEW AT SEVERAL SIGNIFICANT STAGES OF THE PROCESS, AND CONSEQUENTLY, DEATH SENTENCES ARE IMPOSED AND REVIEWED WITHOUT SUFFICIENT STATUTORY GUIDANCE TO JURIES, TRIAL COURTS AND REVIEWING COURTS TO PREVENT THE UNCONSTITUTIONAL ARBITRARY AND CAPRICIOUS INFLICTION OF THE DEATH PENALTY.

7. THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES PROHIBIT SENTENCES WHICH ARE DISPROPORTIONATELY SEVERE IN RELATION TO THE CRIME COMMITTED AND SENTENCES VISITED UPON OTHERS FOR THE SAME CRIME IN THE SAME AND OTHER JURISDICTIONS.

On November 9, 1998, the Ohio Supreme Court affirmed the judgment against Van Hook. *State v. Van Hook*, 39 Ohio St.3d 256, 530 N.E.2d 883 (1988). After conducting its own independent review, the Ohio Supreme Court also found that the aggravating factors substantially outweighed the mitigating factors, and that the death sentence was neither inappropriate nor disproportionate.

Justice Wright authored a dissenting opinion, which Justice Brown joined. Justices Wright and Brown were of the view that the State failed to prove that Van Hook had initiated further discussions with law enforcement officers after invoking his right to counsel, and therefore, that inculpatory statements made by Van Hook to Cincinnati law enforcement officers in Florida, while awaiting extradition to Ohio, should have been suppressed.

On November 21, 1988, Van Hook's attorneys filed a motion for rehearing on the issue of whether petitioner's confession should have been suppressed. On December 21, 1988, the Ohio Supreme Court summarily dismissed the motion. Exhibit 25 vol.III to petitioner's appendix of the state court record.

On March 27, 1989, the Supreme Court of the United States denied Van Hook's petition for a writ of *certiorari*. Exhibit 6 vol.IV to petitioner's appendix of the state court record. On May 15, 1989, the Supreme Court denied his motion for rehearing. Exhibit 8 vol.IV to petitioner's appendix of the state court record. During those proceedings, Van Hook was represented by not only the same two attorneys who had represented him during trial and throughout his direct appeals, but also by Attorney H. Fred Hoefle.

B. *Post–Conviction Proceedings*

Represented by the Ohio Public Defender's Office, Van Hook filed a postconviction action in the trial court on December 27, 1989. He raised the following causes of action:

*FIRST CAUSE OF ACTION*

The judgments and sentences against Petitioner are void or voidable because the Ohio Death Penalty is in violation of international laws and Article VI of the United States Constitution. (¶ 31).

*SECOND CAUSE OF ACTION*

Petitioner was prejudiced because the imposition of a death sentence pursuant to Ohio's capital sentencing scheme is cruel and unusual and violates Petitioner's rights as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Sec-

tions 9 and 16, Article I of the Ohio Constitution.. (¶¶ 38–56)

### THIRD CAUSE OF ACTION

Where the same felony forms the basis for the elevation of the Murder to Aggravated Murder, and then to elevate the Aggravated Murder to Capital Aggravated Murder, the use of that felony fails to narrow the class of offenders eligible for the death penalty and makes meaningful appellate review of the sentence impossible, rendering death sentences under the statute unconstitutional. (¶ 59)

### FOURTH CAUSE OF ACTION

Petitioner's convictions and death sentences are void or voidable because the State failed to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors. (¶ 63)

### FIFTH CAUSE OF ACTION

Petitioner's judgments and sentences are void or voidable because the trial was held in Hamilton County in which there was sensational media coverage concerning the case, making a fair trial impossible. (¶ 69)

### SIXTH CAUSE OF ACTION

The cumulative prejudicial photographs were allowed into evidence after this Court overruled Petitioner's Motion In Limine which would have precluded them. (¶ 73)

### SEVENTH CAUSE OF ACTION

The colloquium between this Court and Petitioner during Petitioner's waiver of his right to a jury trial failed to establish whether the waiver was knowing, voluntary and intelligent. (¶ 80)

### EIGHTH CAUSE OF ACTION

The prosecution erred when referring to Petitioner's criminal history. (¶ 85)

### NINTH CAUSE OF ACTION

R.C. 2929.05(A) requires reviewing courts to *de novo* compare death sentences with sentences imposed in similar cases. The only meaningful construction of "similar cases" is cases in which the death penalty was *sought*. (¶ 90)

### TENTH CAUSE OF ACTION

Prior to trial the prosecution requested that Judge Bettman voluntarily withdraw from the three-judge panel if he could not fairly consider the imposition of the death penalty.

\*　　\*　　\*　　\*　　\*　　\*

Petitioner was prejudiced by this error because of the pressure placed on Judge Bettman to impose the death penalty, thereby denying Petitioner his right to a fair trial. (¶¶ 96–98)

### ELEVENTH CAUSE OF ACTION

This Court erred in permitting the witness to testify, over objection, as to the contents of a letter sent to him by Petitioner. (¶ 101)

### TWELFTH CAUSE OF ACTION

During opening argument, the prosecution stated that a witness, Stephen Wood, had seen a white male leaving the victim's apartment.

When testifying, Stephen Wood stated that he never saw anyone leave the apartment.

Petitioner was prejudiced by this error because the prosecution introduced facts in opening argument which they were unable to prove, denying Petitioner his right to a fair trial. (¶¶ 106–108)

### THIRTEENTH CAUSE OF ACTION

Petitioner's convictions and sentences are void or voidable because Petitioner's

death sentence is disproportionately severe to other cases in Hamilton County, and is inappropriate because of the absence of opinions in cases where life sentences were imposed. (¶ 110)

## FOURTEENTH CAUSE OF ACTION

In its opinion, the trial court improperly placed undue emphasis upon the fact that Petitioner had not testified at the guilt or innocence proceeding of his trial. (¶ 116)

## FIFTEENTH CAUSE OF ACTION

Undue pressure was placed on Judge Bettman to impose a harsh sentence on Petitioner. (¶ 120)

## SIXTEENTH CAUSE OF ACTION

This Court erred in failing to rule on whether the Petitioner's unsworn statement could be used against him at later proceedings. (¶ 128)

## SEVENTEENTH CAUSE OF ACTION

When the Petitioner waived his right to a trial by jury the presiding judge incorrectly stated the law. (¶ 132)

## EIGHTEENTH CAUSE OF ACTION

Petitioner Van Hook's death sentence is void or voidable because defense counsel did not request nor did the trial Court appoint a social worker to assist counsel in identifying, interviewing and preparing witnesses for the mitigation phase of trial. (¶ 137)

## NINETEENTH CAUSE OF ACTION

This Court erred when it considered a pre-sentence report with a victim's impact statement attached in its sentencing deliberations. (¶ 143)

## TWENTIETH CAUSE OF ACTION

The State failed to establish the *corpus delicti* of the crime of aggravated robbery prior to introducing Petitioner's confession into evidence. (¶ 148)

## TWENTY–FIRST CAUSE OF ACTION

Petitioner's conviction and sentences are void or voidable because Petitioner was legally insane at the time of the commission of the crimes. (¶ 153)

## TWENTY–SECOND CAUSE OF ACTION

This Court erred in permitting a witness to testify, over objection, concerning Petitioner's lack of remorse. (¶ 166)

## TWENTY–THIRD CAUSE OF ACTION

Petitioner's conviction and sentences are void or voidable because this Court, in violation of the Fourteenth Amendment to the United States Constitution, Section 16, Article I of the Ohio Constitution, and R.C. Section 2929.50, failed to maintain a complete record of all proceedings. (¶ 173)

## TWENTY–FOURTH CAUSE OF ACTION

This Court erred in permitting a witness to testify, over objection, concerning the future dangerousness of the Petitioner. (¶ 178)

## TWENTY–FIFTH CAUSE OF ACTION

The judgment against Petitioner Van Hook is void or voidable because he was denied the effective assistance of counsel in the guilt phase of trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution. (¶ 185–197)

## TWENTY–SIXTH CAUSE OF ACTION

Once a suspect has invoked his right to counsel, it is mandatory that further interrogation by law enforcement cease until such time as counsel has been made available to the suspect, unless the suspect initiates further conversations with law enforcement. (¶ 200)

## TWENTY–SEVENTH CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because Petitioner was deprived of his right to attend the Court hearing in which a plea bargain was discussed between the trial judges and the prosecutor. (¶ 204)

## TWENTY–EIGHTH CAUSE OF ACTION

During the mitigation phase of Petitioner's trial, defense counsel introduced evidence of four (4) mitigating factors listed in R.C. 2929.04(B): that the victim induced or facilitated the offense [R.C. 2929.04(B)(1) ]; that because of mental disease or defect, Petitioner lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law [R.C. 2929.04(B)(3) ]; that Petitioner lacked a significant history of prior criminal convictions and delinquency adjudications [R.C. 2929.04(B)(5) ]; and that Petitioner had an unsettled childhood [R.C. 2929.04(B)(7) ]. (¶ 209)

## TWENTY–NINTH CAUSE OF ACTION

Petitioner Van Hook's death sentence is void or voidable due to prosecutorial misconduct during the mitigation phase of the trial.

The prosecutor made the following improper comments or arguments during the mitigation phase of the trial.
A) Petitioner was not remorseful.
B) Petitioner would be dangerous in the future.
C) The panel should consider the pictures of the victim in determining if the Aggravating Circumstances outweigh the Mitigating Factors beyond a reasonable doubt.
D) The facts of the case were an aggravating factor.
E) All life sentences could only be imposed if the mitigating factors outweighed the aggravating circumstances.
F) The three judge panel should consider all the mitigating factors, even those not raised by Petitioner.
G) Uncharged misconduct of Petitioner should be considered in determining if the death penalty should be imposed. (¶¶ 215–216)

## THIRTIETH CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because he was denied the effective assistance of counsel in the mitigation phase of the trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution. (¶ 220)

## THIRTY–FIRST CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because the trial court improperly excluded evidence in the mitigation phase.

The trial [court] excluded evidence that Petitioner had attempted to commit suicide and had fantasized that he was a dog. (¶¶ 233–34)

## THIRTY–SECOND CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because Petitioner was denied bond prior to trial. (¶ 237)

### THIRTY–THIRD CAUSE OF ACTION

The convictions and sentences of Petitioner Van Hook are void or voidable because he was denied his right to the assistance of experts in the mitigation phase in violation of the Fourteenth Amendment to the United States Constitution and Section 39, Article II of the Ohio Constitution. (¶ 243)

### THIRTY–FOURTH CAUSE OF ACTION

At trial, the State's witness, Michael Ramsey, was permitted to testify, over objection, as to matters that were hearsay in [illegible]. (¶ 250)

### THIRTY–FIFTH CAUSE OF ACTION

The trial court, in its opinion, improperly combined two of the mitigating factors contained in 2929.04(B). (¶ 255)

### THIRTY–SIXTH CAUSE OF ACTION

Petitioner Van Hook's death sentence is void or voidable because the three judge panel refused to give any weight in mitigation to Petitioner's borderline personality disorder. (¶ 259)

### THIRTY–SEVENTH CAUSE OF ACTION

Prior to trial the three-judge panel and the prosecution conducted an ex parte proceeding.

At that time, Petitioner's case was discussed, which resulted in the prosecution requesting that Judge Bettman remove himself from the panel of judges.

Petitioner was not represented by counsel at these proceedings nor was he personally present. (¶¶ 266–68)

### THIRTY–EIGHTH CAUSE OF ACTION

The trial court erred to the prejudice of Petitioner in entering a judgment and sentence that was against the manifest weight of the evidence. (¶ 272)

### THIRTY–NINTH CAUSE OF ACTION

The three judge panel unduly prejudiced Petitioner when they overruled his motion to increase the burden of proof to beyond all doubt. (¶ 277)

### FORTIETH CAUSE OF ACTION

Petitioner's death sentence is void or voidable because the three-judge panel reviewed a presentence investigation report prior to sentencing Petitioner. (¶ 281)

### FORTY–FIRST CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because the cumulative effects of the errors and omissions as presented in this petition in paragraphs one (1) through two hundred eighty-three (283) have been prejudicial to the petitioner and have denied the Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution. (¶ 285)

On March 7, 1990, petitioner filed an amended postconviction action, seeking to add the following causes of action to his petition:

### FORTY–FIRST CAUSE OF ACTION

Petitioner's convictions and sentences are void or voidable because the trial court erred in denying defense counsel's motion to prohibit death qualification of the jury. (¶ 289)

### FORTY–SECOND CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because Petitioner was denied the effective assistance of counsel on his direct appeal of

right in a capital case as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution. (¶ 294)

On appeal, counsel failed to raise the following issues before the First District Court of Appeals:

A) That Petitioner did not receive a fair trial because of the sensational media coverage surrounding his case.

B) That the colloquium between this court and Petitioner during Petitioner's waiver of his right to a jury trial failed to establish whether the waiver was knowing, voluntary and intelligent.

C) That the prosecution referred to events that had taken place both before and after this crime but that Petitioner had not been charged with.

D) That this court had permitted a witness to testify to the contents of a letter that the witness had intentionally destroyed.

E) That the prosecution failed to prove facts that he mentioned in his opening argument.

F) That Petitioner's death sentence was not given a complete proportionality review as required by Ohio law.

G) That this court had placed undue emphasis in its opinion, upon the fact that Petitioner had not testified at the trial.

H) That undue pressure was placed on Judge Bettman by the media to impose a harsh sentence on Petitioner.

I) That this court erred in failing to rule on whether Petitioner's unsworn statement could be used against him at a later proceeding.

J) That the presiding Judge incorrectly stated the law when Petitioner waived his right to trial by jury.

K) The failure to obtain the assistance of social workers to assist at the mitigation stage of the proceedings.

L) The failure to object to the victim's impact statement being considered by this court.

M) The failure to establish the proper definition of borderline personality disorder.

N) This court erred in permitting a witness to testify concerning Petitioner's lack of remorse.

O) The failure to keep a complete and full transcript of all proceedings before this court.

P) This court erred in permitting a witness to testify concerning the future dangerousness of Petitioner.

Q) That this court considered all the statutory mitigating factors, despite defense counsel specifically limiting the evidence to four of the mitigating factors.

R) The prosecutorial misconduct during the mitigation stage.

S) That this court improperly excluded evidence in the mitigation stage.

T) That Petitioner was denied bond prior to trial.

U) The failure to properly conduct the mitigation evaluation and/or the expert was not presented with sufficient information concerning Petitioner.

V) That a state's witness was permitted to testify as to matters that were hearsay in nature.

W) That this court improperly combined two of the mitigating factors.

X) That this court refused to give any weight in mitigation to Petitioner's borderline personality disorder.

Y) That prior to trial the three-judge panel and the prosecution conducted an ex parte proceeding.

Z) That his court reviewed a presentence investigation report prior to sentencing Petitioner. (¶¶ 296–97)

On appeal, counsel failed to raise the following issues before the Ohio Supreme Court:

A) The cumulative and prejudicial photographs which were allowed into evidence.

B) The prosecution's undue pressure on Judge Bettman to impose a death sentence against Petitioner.

C) That this court erred by overruling Petitioner's motion to increase the burden of proof to beyond all doubt.

D) That this court erred by denying Petitioner's motion to prohibit death qualification of the jury. (¶ 298)

### FORTY-THIRD CAUSE OF ACTION

Petitioner Van Hook's death sentence is void or voidable because the defense counsel did not request nor did the trial Court appoint a social worker to assist counsel in identifying, interviewing and preparing witnesses for the mitigation phase of trial. (¶ 303)

### FORTY-FOURTH CAUSE OF ACTION

Petitioner Van Hook's convictions and sentences are void or voidable because the cumulative effects of the errors or omissions as presented in this petition in paragraphs one (1) through three hundred six (306) have been prejudicial to the Petitioner and have denied the Petitioner his rights as secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution.

The State answered the amended petition on March 23, 1990. On March 30, 1990, Van Hook supplemented his amended postconviction action with an additional exhibit. On April 26, 1990, the State filed a motion for summary judgment and/or a motion to dismiss. On June 11, 1991, the trial court dismissed Van Hook's postcon-

viction action without holding an evidentiary hearing.[5]

Van Hook appealed to the Ohio Court of Appeals for the First Appellate District, and raised the following assignments of error:

### First Assignment of Error

THE TRIAL COURT ERRED IN DENYING APPELLANT VAN HOOK AN EVIDENTIARY HEARING IN REGARD TO HIS PETITION FOR POST–CONVICTION RELIEF.

### Issues Presented for Review and Argument:

1. Can a trial court deny an evidentiary hearing to a post-conviction petitioner when his petition is sufficient on its face to raise constitutional claims which depend on factual allegations that cannot be determined from the record?

### Second Assignment of Error

THE TRIAL COURT ERRED BY ADOPTING VERBATIM THE PROSECUTION'S FINDINGS OF FACT AND CONCLUSIONS OF LAW.

### Issue Presented for Review and Argument:

1. Civ. R. 52 requires that findings of fact and conclusions of law be those made by the court. Findings and conclusions are improper and should be revised when they are written by the prevailing party.

### Third Assignment of Error

THE TRIAL COURT ERRED IN ITS APPLICATION OF THE DOCTRINE OF *RES JUDICATA* TO THE CAUSES OF ACTION RAISED BY APPELLANT.

---

5. It appears from the record that the trial court's entry dismissing the postconviction action was first entered on June 11, 1991, and entered again on July 10, 1991. Exhibits 27 and 29 vol.V part 3 to petitioner's appendix of the state court record.

Issue Presented for Review and Argument:

1. Can the doctrine of *res judicata* be applied to bar Appellant's claims for relief?

**Fourth Assignment of Error**

THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN EACH OF THE FORTY-FOUR CAUSES OF ACTION SET FORTH A CONSTITUTIONAL VIOLATION UPON WHICH RELIEF SHOULD HAVE BEEN GRANTED.

Issue Presented for Review and Argument:

1. Did the trial court err in granting Appellee's Motion for Summary Judgment on each of forty-four Causes of Action which set forth constitutional violations entitling Appellant to relief?

**Fifth Assignment of Error**

THE TRIAL COURT ERRED IN DENYING APPELLANT VAN HOOK'S CIVIL RULE 11 MOTION TO STRIKE RESPONDENT'S MOTION FOR SUMMARY JUDGMENT OR DISMISSAL IN ITS ENTIRETY.

Issue Presented for Review and Argument:

1. Can a trial court deny a Civil Rule 11 motion to strike the state's summary judgment motion when such motion relies upon nonexistent law?

**Sixth Assignment of Error**

THE COURT HAS DENIED APPELLANT VAN HOOK THE OPPORTUNITY TO FILE AN ADEQUATE BRIEF, THEREFORE DEPRIVING HIM OF DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT.

Issue Presented for Review and Argument:

1. An arbitrary fifty (50) page limitation in a complex capital post-conviction appeal denies the Appellant an adequate corrective process.

**Seventh Assignment of Error**

THE TRIAL COURT ERRED IN DENYING APPELLANT VAN HOOK'S MOTION TO RECUSE ITSELF FROM APPELLANT'S CASE.

Issue Presented for Review and Argument:

1. Can a trial court refuse to recuse itself from reviewing a post-conviction petition when there is a clear dispute as to the nature and contents of an ex parte discussion between the three judge panel and the prosecution?

**Eighth Assignment of Error**

THE TRIAL COURT ERRED BY DENYING PETITIONER–APPELLANT VAN HOOK ANY OPPORTUNITY TO CONDUCT DISCOVERY OF FACTS AND EVIDENCE ESSENTIAL TO JUSTIFY HIS OPPOSITION TO SUMMARY JUDGMENT.

Issue Presented for Review and Argument:

1. Civ. R. 56(F) and cases construing mandate that summary judgment not be granted to the moving party before the non-moving party has had the opportunity to conduct discovery essential to justify his opposition.

On October 21, 1992, the court of appeals rejected Van Hook's assignments of error and affirmed the judgment of the trial court. Exhibits 22 and 23 vol.VI to petitioner's appendix of the state court record.

Van Hook appealed to the Supreme Court of Ohio, and essentially raised the same challenges there that he had presented to the appellate court below. The State opposed Van Hook's memorandum in sup-

port of jurisdiction, and, on March 17, 1993, the Ohio Supreme Court issued an entry overruling Van Hook's memorandum. Exhibit 11 vol.VII part 2 to petitioner's appendix of the state court record. Van Hook's motion for rehearing, filed on March 29, 1993, was summarily denied on April 28, 1993. Exhibit 14 vol.VII part 2 to petitioner's appendix of the state court record.

### C. *Proceedings Pursuant to State v. Murnahan*

On April 8, 1993, Van Hook filed, in accordance with *State v. Murnahan,* 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992) and Ohio R.App. P. 26 and 14(B), an application for delayed reconsideration of his direct appeal to the Ohio Court of Appeals, alleging that he had received ineffective assistance of appellate counsel during that proceeding. He argued that his appellate attorneys had failed to raise a number of colorable issues, and sought to present those to the appellate court for review:

*ASSIGNMENT OF ERROR NO. I*

THE LARGE NUMBER OF ERRORS IN THE TRIAL PROCEEDINGS RENDERED ROBERT VAN HOOK'S DEATH SENTENCE INAPPROPRIATE.
ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:
1. Robert Van Hook's death sentence is unreliable, inappropriate, and violates the Eighth and Fourteenth Amendments to the United States Constitution.

*ASSIGNMENT OF ERROR NO. II*

THE TRIAL COURT ERRED WHEN IT FAILED TO MAINTAIN A COMPLETE RECORD OF THE PROCEEDINGS.
ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:
1. Mr. Van Hook's sentence of death is in violation of the Sixth, Eighth and Fourteenth Amendments to the United

States Constitution because the constitutionality mandated appellate review was done from an incomplete record.

*ASSIGNMENT OF ERROR NO. III*

THE TRIAL COURT ERRED BY PERMITTING TESTIMONY OVER OBJECTIONS, THAT ROBERT VAN HOOK DEMONSTRATED NO REMORSE.
ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:
1. The trial court's consideration of Robert Van Hook's lack of remorse violated the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

*ASSIGNMENT OF ERROR NO. IV*

IT IS ERROR FOR THE TRIAL COURT IN A CAPITAL SENTENCING PROCEEDING TO RECEIVE INTO EVIDENCE A PRESENTENCE INVESTIGATION WHICH CONTAINS UNRELIABLE EVIDENCE.
ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:
1. The trial court's admission and consideration of a presentence report violated Mr. Van Hook's rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

*ASSIGNMENT OF ERROR NO. V*

THE TRIAL COURT ERRED IN NOT SUPPRESSING THE STATEMENT OF APPELLANT, ROBERT VAN HOOK.
ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:
1. The Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9, 14 and 19 of the Ohio Constitution protect against illegal searches and seizures. Appellant

Van Hook's confession at the Springdale Police Department, and his subsequent inculpatory statements were the product of an illegal search and seizure and should have been suppressed.

*ASSIGNMENT OF ERROR NO. VI*

THE TRIAL COURT ERRED IN NOT APPOINTING COMPETENT PSYCHOLOGICAL EXPERTS FOR ROBERT VAN HOOK IN THE MITIGATION PHASE OF HIS CAPITAL TRIAL.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court denied Mr. Van Hook his due process, equal protection, effective assistance of counsel, and statutory rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by failing to provide him with an independent psychologist when this service was reasonably necessary to adequate trial representation.

*ASSIGNMENT OF ERROR NO. VII*

THE TRIAL COURT ERRED IN FAILING TO CHANGE OF VENUE DUE TO EXCESSIVE PRETRIAL PUBLICITY.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Appellant Van Hook's right as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution were violated by the trial court's denial of a defense motion.

*ASSIGNMENT OF ERROR NO. VIII*

THE TRIAL COURT ERRED WHEN IT IMPOSED A DEATH SENTENCE WHICH IS DISPROPORTIONATE TO THE NON–CAPITAL SENTENCES RECEIVED BY OTHER HAMILTON COUNTY PERSONS WHO WERE CONVICTED OF AGGRAVATED MURDER INVOLVING EITHER WHITE OR AFRICAN–AMERICAN VICTIMS.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Appellant Van Hook's death sentence is disproportionate, inappropriate and violates the Eighth and Fourteenth Amendments to the United States Constitution.

*ASSIGNMENT OF ERROR NO. IX*

THE TRIAL COURT ERRED WHEN IT ACCEPTED MR. VAN HOOK'S JURY WAIVER WHICH WAS NOT VOLUNTARILY, INTELLIGENTLY, AND KNOWINGLY ENTERED BECAUSE IT WAS BASED UPON ERRONEOUS INFORMATION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Mr. Van Hook's waiver of a jury trial which was not knowingly, intelligently and voluntarily entered and violated his rights as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

*ASSIGNMENT OF ERROR NO. X*

THE TRIAL COURT ERRED WHEN IT IMPOSED A DEATH SENTENCE WHICH VIOLATES INTERNATIONAL LAW AND TREATIES ENTERED INTO BY THE UNITED STATES SENATE.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Ohio's statutory provisions governing its capital punishment scheme violate Article VI of the United States Constitution and various international laws including but not limited to the organization of American States Treaty and the American Declaration of the Rights and Duties of man.

*ASSIGNMENT OF ERROR NO. XI*

THE TRIAL COURT ERRED IN PERMITTING TESTIMONY AND

ARGUMENT CONCERNING FUTURE DANGEROUSNESS.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Consideration of nonstatutory aggravating circumstances at the penalty phase violated Appellant's rights to due process and a fair and reliable determination of his death sentence.

## ASSIGNMENT OF ERROR NO. XII

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS THE IN-COURT IDENTIFICATION OF MR. VAN HOOK WAS BASED UPON AN UNDULY SUGGESTIVE LINE-UP PROCEDURE.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Mr. Van Hook was denied his rights as guaranteed by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by the admission of an in-courtroom identification of Mr. Van Hook by witnesses whose identification of Mr. Van Hook was the result of an improper photograph identification procedure.

## ASSIGNMENT OF ERROR NO. XIII

THE TRIAL COURT ERRED IN OVERRULING MR. VAN HOOK'S MOTION TO DISMISS THE DEATH PENALTY SPECIFICATION IN VIOLATION OF THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Ohio Revised Code, Section 2929.04(A)(7) is unconstitutional as applied to Mr. Van Hook because it does not adequately narrow the class of individuals eligible to receive the death penalty.

## ASSIGNMENT OF ERROR NO. XIV

THE TRIAL COURT ERRED WHEN IT ADMITTED THE "PRIOR BAD ACTS" EVIDENCE INTRODUCED BY THE PROSECUTION INCLUDED EVENTS THAT HAD OCCURRED BOTH BEFORE AND AFTER THE CRIME FOR WHICH MR. VAN HOOK WAS ON TRIAL.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Admission of prejudicial "prior bad acts" evidence at the guilt phase violated Appellant's right to due process and a fair trial as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## ASSIGNMENT OF ERROR NO. XV

THE TRIAL COURT ERRED IN CONDUCTING CERTAIN OF THE PROCEEDINGS WITHOUT THE PRESENCE OF MR. VAN HOOK IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. An accused cannot be excluded from criminal proceedings against him absent misconduct by the accused or an affirmative waiver by the accused on his right to be present.

## ASSIGNMENT OF ERROR NO. XVI

THE TRIAL COURT ERRED WHEN IT FAILED TO REQUIRE THE STATE OF OHIO TO PROVIDE TRIAL COUNSEL FOR MR. VAN HOOK WITH EXCULPATORY EVIDENCE.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Appellant Van Hook was denied his rights to a fair hearing and due process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments because the State failed to provide his counsel with exculpatory evidence prior to trial.

*ASSIGNMENT OF ERROR NO. XVII*

THE TRIAL COURT FAILED TO APPOINT A SOCIAL WORKER TO CONDUCT A SENTENCING INVESTIGATION AND SAID FAILURE RESULTED IN THE TRIAL COURT RECEIVING INCOMPETENT SENTENCING INFORMATION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court's failure to provide Mr. Van Hook with expert assistance denied Appellant Van Hook due process, equal protection, effective assistance of counsel and statutory rights under the Fifth, Sixth, Eighth and Fourteenth Amendments.

*ASSIGNMENT OF ERROR NO. XVIII*

THE TRIAL COURT ERRED WHEN IT DID NOT AFFORD MR. VAN HOOK A PRESUMPTION OF LIFE AT THE MITIGATION PHASE.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Failure to afford Mr. Van Hook a presumption of life violated Appellant Van Hook's rights of due process and a fair and reliable determination of the appropriate penalty, as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

*ASSIGNMENT OF ERROR NO. XIX*

THE PROSECUTOR'S ARGUMENT AND THE TRIAL COURT'S CONSIDERATION OF ALL THE STATUTORY MITIGATING FACTORS, RATHER THAN JUST THE MITIGATING FACTORS RAISED BY MR. VAN HOOK DEPRIVED MR. VAN HOOK OF HIS RIGHTS AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court's consideration of mitigating factors not raised by the accused is improper and converts mitigation into aggravation.

*ASSIGNMENT OF ERROR NO. XX*

THE TRIAL COURT ERRED IN ADMITTING THE VICTIM IMPACT STATEMENT OF BARBARA SELF WHICH THE ADMISSION OF SAID STATEMENT VIOLATED MR. VAN HOOK'S RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. A death penalty which is based upon unreliable and inaccurate evidence is itself unreliable and therefore must be vacated.

*ASSIGNMENT OF ERROR XXI:*

THE TRIAL COURT ERRED WHEN IT PERMITTED AFRICAN–AMERICANS TO BE SYSTEMATICALLY EXCLUDED FROM THE GRAND JURY THAT INDICTED ROBERT VAN HOOK.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Systematic exclusion of African–Americans from the grand jury denies the indicted individual his rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

*ASSIGNMENT OF ERROR NO. XXII*

THE TRIAL COURT (JUDGE BETTMAN) ERRED IN REFUSING TO RECUSE HIMSELF.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Judge Bettman's refusal to recuse himself violated Appellant's rights to a

reliable guilt and sentencing determination by an informed trier of fact as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution.

### ASSIGNMENT OF ERROR
### NO. XXIII

THE TRIAL COURT ERRED BY NOT PREVENTING PROSECUTORIAL MISCONDUCT DURING THE MITIGATION PHASE OF TRIAL.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Misconduct by the prosecuting attorney, during the mitigation phase in Robert Van Hook's trial, deprived him of his rights to due process, a fair trial and a fair and reliable determination of his sentence as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### ASSIGNMENT OF ERROR
### NO. XXIV

THE TRIAL COURT ERRED WHEN IT PERMITTED THE COURTROOM TESTIMONY OF RONALD LIGHT WHEN SAID TESTIMONY WAS THE PRODUCT OF IMPROPER HYPNOSIS.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Appellant Van Hook was denied his rights to due process, effective assistance of counsel and confrontation as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution by the admission of hypnotically refreshed testimony.

### ASSIGNMENT OF ERROR NO. XXV

THE TRIAL COURT ERRED WHEN IT PENALIZED MR. VAN HOOK FOR HIS FAILURE TO TESTIFY IN VIOLATION OF THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. An accused may not be penalized by the trier of fact for failing to testify.

### ASSIGNMENT OF ERROR
### NO. XXVI

THE TRIAL COURT ERRED IN FAILING TO FIND THAT ROBERT VAN HOOK WAS NOT LEGALLY INSANE AT THE TIME OF THE COMMISSION OF THE OFFENSE.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution requires that a verdict in a capital case must be based upon reliable competent evidence.

### ASSIGNMENT OF ERROR
### NO. XXVII

THE TRIAL COURT'S PRECLUSION OF MITIGATING EVIDENCE AT MR. VAN HOOK'S PENALTY HEARING VIOLATED MR. VAN HOOK'S RIGHT TO A RELIABLE SENTENCING DETERMINATION BY AN INFORMED TRIER OF FACT, AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trier of fact is required to consider all relevant information which supports the imposition of a sentence less than death.

### ASSIGNMENT OF ERROR
### NO. XXVIII

THE TRIAL COURT ERRED WHEN IT IMPOSED A DEATH SENTENCE IN A COUNTY WHERE THE DEATH PENALTY IS APPLIED IN A RACIALLY DISCRIMINATORY MAN-

NER, IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Death sentences imposed in Hamilton County are imposed in a racially discriminatory manner.

## ASSIGNMENT OF ERROR NO. XXIX

THE TRIAL COURT ERRED IN IGNORING MITIGATING FACTORS IN ITS SENTENCING OPINION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Robert Van Hook's death sentence is unreliable and inappropriate because he was denied the procedural safeguard of a meaningful, independent review of the evidence by the trial court in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## ASSIGNMENT OF ERROR NO. XXX

THE TRIAL COURT ERRED WHEN IT IMPOSED A DEATH SENTENCE WHICH WAS THE PRODUCT OF THE POLICIES ADOPTED AND PROCEDURES EMPLOYED BY THE HAMILTON COUNTY PROSECUTOR'S OFFICE IN SEEKING AND SECURING CAPITAL CONVICTIONS AND DEATH SENTENCES WHICH VIOLATE THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION. AS A RESULT, MR. VAN HOOK'S CONVICTIONS AND DEATH SENTENCE ARE CONSTITUTIONALLY INFIRM.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The policies of the Hamilton County Prosecutor's Office concerning the prosecution of capital cases have resulted in the arbitrary and discriminatory enforcement of the death penalty in Hamilton County.

## ASSIGNMENT OF ERROR NO. XXXI

THE TRIAL COURT ERRED WHEN IT PERMITTED A WITNESS TO TESTIFY CONCERNING THE CONTENTS OF A LETTER SENT TO HIM BY MR. VAN HOOK.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The State of Ohio cannot be permitted to benefit from evidence that it destroyed.

## ASSIGNMENT OF ERROR NO. XXXII

THE TRIAL COURT ERRED WHEN IT ACCEPTED MR. VAN HOOK'S WAIVER OF A JURY TRIAL WHICH WAS NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED, AND VIOLATED HIS RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Mr. Van Hook's jury waiver was not voluntarily intelligently, and knowingly entered because it was based upon erroneous information.

## ASSIGNMENT OF ERROR NO. XXXIII

THE TRIAL COURT ERRED IN ADMITTING PREJUDICIAL HEARSAY TESTIMONY.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The admission of hearsay evidence violated Robert Van Hook's rights of confrontation of witnesses and due pro-

cess under the Sixth and Fourteenth Amendments to the United States Constitution.

## ASSIGNMENT OF ERROR
### NO. XXXIV

THIS COURT ERRED WHEN IT AFFIRMED A DEATH SENTENCE WHICH WAS INAPPROPRIATE BECAUSE MR. VAN HOOK WAS DENIED THE PROCEDURAL SAFEGUARD OF A MEANINGFUL PROPORTIONALITY REVIEW BY THIS COURT IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The failure of the trial courts to file sentencing opinions in cases in which the jury has returned a life verdict has resulted in appellate courts conducting a biased and incomplete proportionality review.

## ASSIGNMENT OF ERROR
### NO. XXXV

THE TRIAL COURT ERRED WHEN IT APPLIED A DEFINITION OF REASONABLE DOUBT WHICH WAS INAPPLICABLE TO CAPITAL SENTENCING HEARING.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The sentence in Appellant Van Hook's case violates his rights to due process and right against cruel and unusual punishment as guaranteed by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

## ASSIGNMENT OF ERROR
### NO. XXXVI

THE TRIAL COURT ERRED WHEN IT PERMITTED THE PROSECUTOR TO REFER TO MATTERS NOT IN EVIDENCE.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Misconduct by the government's attorney, during guilt phase opening statement in Mr. Van Hook's trial, deprived him of his rights to due process, a fair trial and a fair and reliable determination of his guilt and sentence as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## ASSIGNMENT OF ERROR
### NO. XXXVII

THE TRIAL COURT ERRED IN NOT SETTING BOND OR AT LEAST CONDUCTING A BOND HEARING.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court's failure to set bond violated Robert Van Hook's rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution.

## ASSIGNMENT OF ERROR
### NO. XXXVIII

THE TRIAL COURT ERRED IN FAILING TO RULE ON WHETHER AN UNSWORN MITIGATING STATEMENT BY APPELLANT COULD BE USED IN A SUBSEQUENT PROCEEDING.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court did not receive all relevant mitigating evidence and penalized Mr. Van Hook for exercising his constitutional rights in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 9, 10 and 16 of the Ohio Constitution.

### ASSIGNMENT OF ERROR NO. XXXIX

THE TRIAL COURT ERRED WHEN IT IMPOSED IN A DEATH SENTENCE WHICH WÁS NOT BASED UPON EVIDENCE SUFFICIENT TO PROVE BEYOND A REASONABLE DOUBT THAT THE AGGRAVATING CIRCUMSTANCE OUTWEIGHED THE MITIGATING FACTORS.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. Mr. Van Hook's rights of due process and against cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution were violated because there was insufficient evidence to prove that the aggravating circumstances outweighed the mitigation factors.

### ASSIGNMENT OF ERROR NO. XL

THIS COURT ERRED WHEN IT AFFIRMED MR. VAN HOOK'S DEATH SENTENCE WHICH WAS UNRELIABLE AND INAPPROPRIATE BECAUSE MR. VAN HOOK WAS DENIED THE PROCEDURAL SAFEGUARD OF A MEANINGFUL INDEPENDENT PROPORTIONALITY REVIEW OF THE APPROPRIATENESS OF HIS DEATH SENTENCE BY THIS COURT IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. A proportionality review that does not include a review of decisions in which death is not imposed on a review of similarly situated factual cases is not a meaningful or adequate proportionality review.

### ASSIGNMENT OF ERROR NO. XLI

THE TRIAL COURT ERRED WHEN IT EMPLOYED THE OHIO STATUTORY DEFINITION OF REASONABLE DOUBT WHICH ALLOWED A FINDING OF GUILT BASED UPON A DEGREE OF PROOF BELOW THAT REQUIRED BY THE DUE PROCESS CLAUSE.

ISSUE(S) PRESENTED REVIEW AND ARGUMENT:

1. The convictions and sentences in Appellant Van Hook's case violates his rights to due process and right against cruel and unusual punishment as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### ASSIGNMENT OF ERROR NO. XLII

THE TRIAL COURT ERRED IN ADMITTING AN INACCURATE VICTIM IMPACT STATEMENT.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court's consideration of an inaccurate victim impact statement violated the Sixth and Fourteenth Amendments to the United States Constitution.

### ASSIGNMENT OF ERROR NO. XLIII

THE TRIER OF FACT'S CONSIDERATION OF A NONSTATUTORY AGGRAVATING CIRCUMSTANCE VIOLATED MR. VAN HOOK'S RIGHTS TO DUE PROCESS AND A FAIR AND RELIABLE DETERMINATION OF HIS DEATH SENTENCE, AS GUARANTEED BY THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court erred when it received into evidence a death recommendation made by local law enforcement agency.

*ASSIGNMENT OF ERROR
NO. XLIV*

THE GUILT AND SENTENCING VERDICTS VIOLATED MR. VAN HOOK'S RIGHTS AS GUARANTEED BY THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court erred when it permitted Ronald Light to offer inaccurate testimony at trial.

*ASSIGNMENT OF ERROR NO. XLV*

THE TRIAL COURT ERRED IN NOT APPOINTING A PATHOLOGY EXPERT TO ASSISTANT TRIAL COUNSEL FOR APPELLANT.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court denied Appellant Van Hook his due process, equal protections, effective assistance of counsel and statutory rights under the Fifth, Sixth, Eighth and Fourteenth Amendments by failing to provide him with expert assistance when those services were reasonably necessary to adequate trial representation.

*ASSIGNMENT OF ERROR
NO. XLVI*

THE TRIAL COURT ERRED IN NOT APPOINTING A FINGERPRINT EXPERT TO ASSIST TRIAL COUNSEL FOR APPELLANT.

ISSUE(S) PRESENTED FOR REVIEW AND ARGUMENT:

1. The trial court denied Appellant Van Hook his due process, equal protections, effective assistance of counsel and statutory rights under the Fifth, Sixth, Eighth and Fourteenth Amendments by failing to provide him with expert assistance when those services were reason-ably necessary to adequate trial representation.

The State opposed Van Hook's motion, and, on February 22, 1994, the court of appeals denied Van Hook's motion because he "failed to show good cause for filing it more than ninety days after this Court's judgment was journalized, as required by App. R. 26(B)(2)(b)." Exhibit 4 vol.VIII to petitioner's appendix of the state court record. In so holding, the appellate court noted that the application for delayed reconsideration had actually been filed before the effective date of the amendment to App.R. 26 that created the ninety-day limitation period. Van Hook filed a motion for rehearing, arguing that it was unfair to subject him to a procedural limitation that had not been in effect at the time that he filed his application. The appellate court summarily overruled his motion on April 4, 1994. Exhibit 8 vol.VIII to petitioner's appendix of the state court record.

Van Hook appealed to the Supreme Court of Ohio. The State opposed his memorandum in support of jurisdiction, and, on June 8, 1994, the Ohio Supreme Court affirmed the appellate court's decision without opinion. Exhibit 4 vol.IX to petitioner's appendix of the state court record. On August 3, 1994, the Ohio Supreme Court summarily denied Van Hook's motion for rehearing. Exhibit 7 vol.IX to petitioner's appendix of the state court record. The Supreme Court of the United States denied *certiorari* on or about December 12, 1994, and a petition for rehearing on or about February 21, 1995. Exhibits 8 and 10 vol.X to petitioner's appendix of the state court record.

On June 21, 1994, Van Hook filed a motion for delayed reconsideration pursuant to *State v. Murnahan, supra,* in the Supreme Court of Ohio. He reasoned that, because appeals to the Ohio Supreme Court in death penalty cases are characterized as second appeals *as of right,* he was entitled to the effective assistance of counsel before that court, and therefore also entitled to use the procedure an-

nounced in the *Murnahan* decision for asserting the ineffectiveness of his attorneys before that court. Van Hook argued that his appellate attorneys failed to raise numerous errors of actual or arguable merit during his direct appeal to the Ohio Supreme Court, and sought to introduce those issues for review in his motion for reconsideration:

### PROPOSITION OF LAW NO. I

A DEATH SENTENCE ON APPEAL CAN ONLY BE AFFIRMED IF THE CUMULATIVE EFFECT OF ALL THE ERRORS IN THE ENTIRE PROCEEDINGS DOES NOT RENDER THE DEATH SENTENCE INAPPROPRIATE. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND R.C. 2929.05.

### PROPOSITION OF LAW NO. II

AN APPELLATE REVIEW OF A CAPITAL SENTENCE, TO MEET THE REQUIREMENTS OF DUE PROCESS AND THE EIGHTH AMENDMENT MUST BE BASED UPON A REVIEW OF THE ENTIRE RECORD OF THE PROCEEDING BEFORE THE TRIAL COURT. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE, SECTION 2929.05.

### PROPOSITION OF LAW NO. III

IN A CAPITAL TRIAL, THE COURT IS TO ADMIT ONLY THAT EVIDENCE WHICH IS RELEVANT TO THE OFFENSES CHARGED IN THE INDICTMENT. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.

### PROPOSITION OF LAW NO. IV

IN A CAPITAL SENTENCING PROCEEDING, IT IS ERROR FOR THE COURT TO ADMIT INTO EVIDENCE A PRESENTENCE INVESTIGATION WHICH CONTAINS UNRELIABLE EVIDENCE WHICH IS NOT RELEVANT TO THE MITIGATING FACTORS RAISED BY THE ACCUSED. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### PROPOSITION OF LAW NO. V

IN A CAPITAL CASE, IT IS ERROR FOR THE TRIAL COURT TO ADMIT INTO EVIDENCE A DEFENDANT'S STATEMENT OR ANY RESULTING EVIDENCE THEREFROM WHICH IS THE PRODUCT OF AN ILLEGAL WIRETAP AND SEARCH AND SEIZURE. FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 9, 14 AND 19 OF THE OHIO CONSTITUTION. RATHER, THE CASE SHOULD HAVE BEEN DISMISSED BECAUSE OF GOVERNMENT MISCONDUCT.

### PROPOSITION OF LAW NO. VI

A DEFENDANT IS ENTITLED TO THE ASSISTANCE OF COMPETENT EXPERTS, ENGAGED TO MEET APPLICABLE PROFESSIONAL STANDARDS, INCLUDING AN INDEPENDENT PSYCHOLOGIST AND/OR PSYCHIATRIST DURING THE TRIAL AND MITIGATION PHASES OF A CAPITAL TRIAL WHERE SUCH EXPERT ASSISTANCE WAS REASONABLY NECESSARY TO ESTABLISH AN INSANITY DEFENSE AT TRIAL AND MITIGATING FACTORS AT SENTENCING. FIFTH, SIXTH, EIGHTH AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. VII

A TRIAL COURT IS OBLIGATED TO GRANT A CHANGE OF VENUE WHEN THERE IS A REASONABLE LIKELIHOOD THAT PREJUDICIAL NEWS COVERAGE WILL RESULT IN AN UNFAIR TRIAL. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. VIII

A DEATH SENTENCE, TO BE CONSTITUTIONALLY IMPOSED, MUST BE PROPORTIONAL TO SENTENCES IMPOSED IN OTHER CASES WITH SIMILAR FACTS AS WELL AS TO OTHER CASES IN WHICH PERSONS WERE CONVICTED OF AGGRAVATED MURDER INVOLVING AFRICAN–AMERICAN VICTIMS. FOURTH, FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE, SECTIONS 2929.03 AND 2929.05.

## PROPOSITION OF LAW NO. IX

IN A CAPITAL CASE, IT IS ERROR FOR THE TRIAL COURT TO ACCEPT A DEFENDANT'S WAIVER OF HIS RIGHT TO A JURY TRIAL WHEN SAID WAIVER IS NOT ENTERED INTO VOLUNTARILY, INTELLIGENTLY, AND KNOWINGLY. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION; AND, OHIO REVISED CODE, SECTION 2945.05.

## PROPOSITION OF LAW NO. X

OHIO'S DEATH PENALTY STATUTE VIOLATES ARTICLE IV OF THE UNITED STATES CONSTITUTION AS WELL AS VARIOUS INTERNATIONAL TREATIES TO WHICH THE UNITED STATES IS A PARTY. ARTICLE VI OF THE UNITED STATES CONSTITUTION AND VARIOUS INTERNATIONAL LAWS INCLUDING BUT NOT LIMITED TO THE ORGANIZATION OF AMERICAN STATES TREATY AND THE AMERICAN DECLARATION OF THE RIGHTS AND DUTIES OF MAN.

## PROPOSITION OF LAW NO. XI

IN A CAPITAL SENTENCING PROCEEDING, IT IS ERROR FOR THE TRIAL COURT TO PERMIT TESTIMONY AND ARGUMENT CONCERNING THE FUTURE DANGEROUSNESS OF THE ACCUSED. FOURTH, FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XII

A WITNESS' IDENTIFICATION OF THE ACCUSED, EITHER PRIOR TO TRIAL OR DURING TRIAL, IS NOT ADMISSIBLE IF THE IDENTIFICATION IS THE PRODUCT OF AN UNDULY SUGGESTIVE PROCEDURE. FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XIII

THE SAME UNDERLYING FELONY MAY NOT BE USED TO ELEVATE THE OFFENSE FOR WHICH THE DEFENDANT IS CHARGED FROM MURDER TO AGGRAVATED MURDER AND FROM AGGRAVATED MURDER TO CAPITAL MURDER. FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XIV*

IT IS ERROR FOR THE TRIAL COURT TO ADMIT "PRIOR BAD ACTS" EVIDENCE INCLUDING EVENTS THAT OCCURRED BOTH BEFORE AND AFTER THE CRIME FOR WHICH THE ACCUSED WAS ON TRIAL. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XV*

A TRIAL COURT MAY NOT DEPRIVE A DEFENDANT OF THE RIGHT TO ATTEND COURT PROCEEDINGS ABSENT MISCONDUCT BY THE ACCUSED OR AN AFFIRMATIVE WAIVER BY THE ACCUSED OF HIS RIGHT TO BE PRESENT. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XVI*

IT IS ERROR FOR THE TRIAL COURT TO FAIL REQUIRE THE STATE OF OHIO TO PROVIDE DEFENSE COUNSEL WITH EXCULPATORY EVIDENCE PRIOR TO TRIAL. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XVII*

A DEFENDANT IS ENTITLED TO THE ASSISTANCE OF COMPETENT EXPERTS INCLUDING SOCIAL WORKERS DURING THE MITIGATION PHASE OF A CAPITAL TRIAL. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XVIII*

IN THE SENTENCING PHASE OF A CAPITAL CASE, THE TRIER OF FACT IS REQUIRED TO AFFORD THAT THE DEFENDANT IS AFFORDED A PRESUMPTION OF LIFE. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE, SECTION 2929.03.

*PROPOSITION OF LAW NO. XIX*

IN A CAPITAL SENTENCING PHASE PROCEEDING, THE TRIER OF FACT SHOULD CONSIDER ONLY THE MITIGATING FACTORS, SPECIFICALLY RAISED BY THE ACCUSED. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE, SECTION 2929.03 AND 2929.04.

*PROPOSITION OF LAW NO. XX*

IN A CAPITAL SENTENCING PROCEEDING, IT IS ERROR FOR THE TRIAL COURT TO ADMIT A VICTIM IMPACT STATEMENT. SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXI*

AFRICAN–AMERICANS AND OTHER COGNIZABLE MINORITIES MAY NOT BE SYSTEMATICALLY EXCLUDED FROM THE GRAND JURY IN A CAPITAL CASE. FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXII*

THE TRIAL COURT (JUDGE BETTMAN) ERRED IN REFUSING TO RECUSE HIMSELF. EIGHTH AND FOURTEENTH AMENDMENTS TO

THE UNITED STATES CONSTITU-
TION.

*PROPOSITION OF LAW NO. XXIII*

THE TRIAL COURT MUST PRE-
VENT PROSECUTORIAL MISCON-
DUCT DURING THE MITIGATION
PHASE OF CAPITAL TRIAL.
FIFTH, SIXTH, EIGHTH AND
FOURTEENTH ·AMENDMENTS TO
THE UNITED STATES CONSTITU-
TION.

*PROPOSITION OF LAW NO. XXIV*

IN A CAPITAL TRIAL, IT IS ERROR
FOR THE TRIAL COURT TO PER-
MIT COURTROOM TESTIMONY
WHICH IS THE PRODUCT OF IM-
PROPER HYPNOSIS. FIFTH,
SIXTH, EIGHTH AND FOUR-
TEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXV*

THE TRIAL COURT ERRED WHEN
IT PENALIZED MR. VAN HOOK
FOR HIS FAILURE TO TESTIFY.
FIFTH, EIGHTH AND FOUR-
TEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXVI*

THE TRIAL COURT ERRED IN
FAILING TO FIND THAT ROBERT
VAN HOOK WAS LEGALLY INSANE
AT THE TIME OF THE COMMIS-
SION OF THE OFFENSE. FIFTH,
SIXTH, EIGHTH AND FOUR-
TEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXVII*

THE TRIAL COURT MAY NOT PRE-
CLUDE THE TRIER OF FACT
FROM CONSIDERING THE DEFEN-
DANT'S MITIGATING EVIDENCE.
EIGHTH AND FOURTEENTH
AMENDMENTS TO THE UNITED

STATES CONSTITUTION, R.C. SEC-
TIONS 2929.03 AND 2929.04.

*PROPOSITION OF LAW NO. XXVIII*

A COUNTY JUDICIAL SYSTEM
MUST BE OPERATED IN SUCH A
MANNER TO GUARANTEE THAT
DEATH SENTENCES ARE IM-
POSED IN A RACIALLY NEUTRAL
MANNER. FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMEND-
MENTS TO THE UNITED STATES
CONSTITUTION.

*PROPOSITION OF LAW NO. XXIX*

A DEATH SENTENCE IS CONSTI-
TUTIONALLY INFIRM WHEN THE
TRIAL COURT IGNORES MITIGAT-
ING FACTORS WHEN IMPOSING
THE DEATH PENALTY. FIFTH,
SIXTH, EIGHTH AND FOUR-
TEENTH AMENDMENTS TO THE
UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXX*

IT IS ERROR FOR A TRIAL COURT
TO IMPOSE A DEATH SENTENCE
WHICH IS THE PRODUCT OF POLI-
CIES AND PROCEDURES WHICH
SEEK AND SECURE DEATH SEN-
TENCES IN A RACIALLY BIASED
MANNER. FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMEND-
MENTS TO THE UNITED STATES
CONSTITUTION.

*PROPOSITION OF LAW NO. XXXI*

IT IS ERROR FOR A TRIAL COURT
TO PERMIT A WITNESS TO TESTI-
FY AS TO THE CONTENTS OF A
LETTER WHICH THE WITNESS
HAD PREVIOUSLY DESTROYED.

*PROPOSITION OF LAW NO. XXXII*

IN A CAPITAL CASE, IT IS ERROR
FOR THE TRIAL COURT TO AC-
CEPT A DEFENDANT'S WAIVER
OF HIS RIGHT TO A JURY TRIAL
WHEN THE WAIVER IS NOT EN-

TERED INTO VOLUNTARILY, IN-TELLIGENTLY, AND KNOWINGLY. SIXTH, EIGHTH AND FOUR-TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXXIII*

HEARSAY STATEMENTS ARE NOT ADMISSIBLE AS SUBSTANTIVE EVIDENCE IN A CAPITAL PRO-CEEDING. FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITU-TION AND OHIO EVID. R. 802.

*PROPOSITION OF LAW NO. XXXIV*

WHEN A STATE CREATES A STAT-UTORY RIGHT TO APPELLATE RE-VIEW OF THE PROPORTIONALITY OF DEATH SENTENCES, THAT RE-VIEW MUST BE BASED UPON AN ADEQUATE INFORMATIONAL BASE. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITU-TION AND OHIO REVISED CODE, SECTIONS 2929.03 AND 2929.05.

*PROPOSITION OF LAW NO. XXXV*

IN A CAPITAL SENTENCING PHASE, IT IS ERROR FOR THE TRIAL COURT TO APPLY THE GUILT PHASE DEFINITION OF REASONABLE DOUBT. FIFTH, SIXTH, EIGHTH AND FOUR-TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE, SEC-TIONS 2901.05(D), 2929.03 AND 2929.04.

*PROPOSITION OF LAW NO. XXXVI*

IT IS IMPROPER FOR THE PROSE-CUTION TO ENGAGE IN MISCON-DUCT DURING THE GUILT PHASE OPENING STATEMENTS OF A CAP-ITAL CASE. FIFTH, SIXTH, EIGHTH AND FOURTEENTH

AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXXVII*

IN A CAPITAL CASE, THE TRIAL COURT MUST SET BOND OR AT LEAST CONDUCT A BOND HEAR-ING. EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXXVIII*

IN A CAPITAL CASE, THE TRIAL COURT MUST DETERMINE WHETHER AN UNSWORN STATE-MENT BY APPELLANT CAN BE USED IN A SUBSEQUENT PRO-CEEDING. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMEND-MENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. XXXIX*

A DEATH SENTENCE CANNOT BE IMPOSED UNLESS THE EVI-DENCE IS SUFFICIENT TO PROVE THAT THE PROSECUTION HAS MET ITS BURDEN OF PROVING BEYOND A REASONABLE DOUBT THAT THE AGGRAVATING CIR-CUMSTANCE(S) OUTWEIGHED THE MITIGATING FACTORS. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITU-TION AND OHIO REVISED CODE, SECTION 2929.03.

*PROPOSITION OF LAW NO. XL*

WHEN A STATE ENACTS A STATU-TORY RIGHT TO AN APPROPRI-ATENESS REVIEW OF A DEATH SENTENCE IN A CAPITAL CASE, THAT REVIEW MUST BE CON-DUCTED IN A MANNER CONSIS-TENT WITH DUE PROCESS. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO

THE UNITED STATES CONSTITU-TION AND OHIO REVISED CODE, SECTIONS 2929.03 AND 2929.05.

## PROPOSITION OF LAW NO. XLI

THE OHIO STATUTORY DEFINI-TION OF REASONABLE DOUBT AS CODIFIED IN OHIO REVISED CODE, SECTION 2901.05(D) IS UN-CONSTITUTIONAL IN THAT IT DOES NOT REQUIRE A SUFFI-CIENT DEGREE OF CERTAINTY OF EVIDENCE FOR THE DEFEN-DANT TO BE CONVICTED OF AG-GRAVATED MURDER WITH A DEATH PENALTY SPECIFICA-TION. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMEND-MENTS TO THE UNITED STATES CONSTITUTION AND OHIO RE-VISED CODE, SECTION 2901.05.

## PROPOSITION OF LAW NO. XLII

IN A CAPITAL SENTENCING PRO-CEEDING, IT IS ERROR FOR THE TRIAL COURT TO ADMIT AN INAC-CURATE VICTIM IMPACT STATE-MENT. SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XLIII

IN A CAPITAL SENTENCING PRO-CEEDING, THE TRIER OF FACT SHALL ONLY CONSIDER AGGRA-VATING CIRCUMSTANCES LISTED IN OHIO REVISED CODE, SECTION 2929.04(A) FOR WHICH THE DE-FENDANT WAS INDICTED AND CONVICTED IN THE INNOCENCE–GUILT STAGES OF THE PROCEED-INGS. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMEND-MENTS TO THE UNITED STATES CONSTITUTION; OHIO REVISED CODE, SECTION 2929.03; OHIO RE-VISED CODE, SECTION 2929.04.

## PROPOSITION OF LAW NO. XLIV

PERJURED AND/OR INACCURATE TESTIMONY OF INADMISSIBLE EVIDENCE IN A CAPITAL TRIAL. EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XLV

AN INDIGENT DEFENDANT, IN A CAPITAL CASE, IS ENTITLED TO THE APPOINTMENT OF COMPE-TENT EXPERTS INCLUDING A PA-THOLOGIST. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XLVI

AN INDIGENT DEFENDANT, IN A CAPITAL CASE, IS ENTITLED TO THE APPOINTMENT OF COMPE-TENT EXPERTS INCLUDING A FINGERPRINT EXPERT. FIFTH, SIXTH, EIGHTH AND FOUR-TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XXXLVII

IN A CAPITAL CASE ON APPEAL, THE STATE OF OHIO BEARS THE BURDEN OF PROOF, BEYOND A REASONABLE DOUBT, TO DEMON-STRATE THAT ANY CONSTITU-TIONAL ERROR DID NOT CON-TRIBUTE TO THE CONVICTION OR SENTENCE. FIFTH AND FOUR-TEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

## PROPOSITION OF LAW NO. XXXLVIII

PROCEEDINGS OCCURRING BE-FORE THE GRAND JURY MUST BE RECORDED. FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITU-

TION, OHIO CRIMINAL RULES 6, 22 AND R.C. 2929.05.

*PROPOSITION OF LAW NO. XLIX*

AFRICAN–AMERICANS, HISPANICS AND OTHER COGNIZABLE MINORITIES MAY NOT BE SYSTEMATICALLY EXCLUDED FROM THE POSITION OF GRAND JURY FOREPERSON. FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO CRIM. R. 6.

*PROPOSITION OF LAW NO. L*

AFRICAN–AMERICANS AND OTHER COGNIZABLE MINORITIES MAY NOT BE EXCLUDED OR UNDER REPRESENTED IN THE VENIRE FROM WHICH MEMBERS OF THE GRAND JURY ARE SELECTED. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

*PROPOSITION OF LAW NO. LI*

AN APPELLATE REVIEW OF A CAPITAL SENTENCE, TO MEET THE REQUIREMENTS OF DUE PROCESS AND THE EIGHTH AMENDMENT MUST BE BASED UPON A REVIEW OF THE ENTIRE RECORD OF THE PROCEEDING BEFORE THE TRIAL COURT. FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND OHIO REVISED CODE, SECTION 2929.05.

The State opposed Van Hook's motion for rehearing/reconsideration, and, on October 19, 1994, the Ohio Supreme Court denied his motion on the ground that "Van Hook's 1987 appeal to this court was not a first appeal as of right; therefore, he had not constitutional right to counsel, hence no constitutional right to effective assistance."

(citation omitted). *State v. Van Hook*, 70 Ohio St.3d 1216, 639 N.E.2d 1199 (1994), exhibit 3 vol.XI to petitioner's appendix of the state court record. On December 14, 1994, the Ohio Supreme Court denied Van Hook's motion for reconsideration. Exhibit 6 vol.XI to petitioner's appendix of the state court record. On May 9, 1995, the United States Supreme Court denied Van Hook's request for *certiorari*. Exhibit 8 vol.XI to petitioner's appendix of the state court record.